COMMONWEALTH of Pennsylvania,
Appellee

v.

Louis GARZONE, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 26, 2010.
Filed April 14, 2010.

John W. Morris, Philadelphia, for appellant.

Mariana C. Sorensen, Assistant District Attorney, and Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, MUNDY, JJ., and McEWEN, P.J.E.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered on January 30, 2009 in the Court of Common Pleas of Philadelphia County following Appellant Louis Garzone's guilty plea to numerous charges, including corrupt organizations, criminal conspiracy, 244 counts of theft by unlawful taking (for theft of body parts), abuse of corpse, recklessly endangering another person, and fraudulently obtaining food stamps or other public assistance [1] in connection with his participation in the illegal harvesting and sale of human body parts from corpses, as well as filing false forms seeking reimbursement from the government for providing funeral services for which he had already been paid. As part of Appellant's sentence, upon the filing of a timely post-sentence motion by the Commonwealth, the trial court directed Appellant to pay $90,101, which was comprised of $84,796 for the salaries of the assistant district attorneys and county detectives assigned to the District Attorney's Office, as well as $5,305 for the grand jury costs. On appeal, Appellant contends the trial court did not have the authority to order Appellant to pay the expenses associated with the district attorneys' salaries, the county detectives' salaries, or the grand jury costs. We vacate Appellant's judgment of sentence as it relates to the costs for the assistant district attorneys' and county detectives' salaries but affirm in all other respects.

¶ 2 The relevant factual history has been aptly set forth by the trial court as follows:

[Appellants] Louis and Gerald Garzone [2] were licensed funeral home directors who operated separate funeral homes in Philadelphia. N.T. 9/2/08 at 24. [Appellants] were also co-owners of Liberty Crematorium in Philadelphia with co-defendant James McCafferty. N.T. 9/2/08 at 24. In early 2004, [Appellants] and Mr. McCafferty were approached by codefendant Michael Mastromarino, [3] the founder and president of a business called Biomedical Tissue Services ("BTS") that sold human tissue harvested from cadavers to tissue banks. N.T. 9/2/08 at 24–26. Mr. Mastromarino had initially partnered with funeral home directors in New York and New Jersey. N.T. 9/2/08 at 26. These funeral home directors provided Mr. Mastromarino with cadavers from which he and his team of "cutters" could harvest tissue without the consent of the deceased or their next of kin and then sell to tissue banks. N.T. 9/2/08 at 25–26. However, this arrangement required Mr. Mastromarino and his cutters to reconstruct the cadavers with PVC pipe after harvesting to conceal their activity and prepare the bodies for viewing and burial. N.T. 9/2/08 at 26. Therefore, Mr. Mastromarino approached [Appellants] and Mr. McCafferty, who as owners of a crematorium, had access to cadavers destined for cremation and could

---

**1.** 18 Pa.C.S.A. §§ 911, 903, 3921, 5510, 2705, and 62 P.S. § 481, respectively.

**2.** Gerald Garzone filed an appeal to this Court, which is docketed at 695 EDA 2009. We have addressed Gerald Garzone's appeal in a separate decision.

**3.** Michael Mastromarino filed an appeal to this Court, which is docketed at 3443 EDA 2008. We have addressed Mr. Mastromarino's appeal in a separate decision.

provide these cadavers without concern for their post-harvesting condition. N.T. 9/2/08 at 24–27.

[Appellants] and McCafferty agreed to provide bodies that had been entrusted to their funeral homes and crematorium for cremation to Mr. Mastromarino, who would then harvest bones and tissue from the cadavers to sell to tissue banks. N.T. 9/2/08 at 24–25. In exchange, Mr. Mastromarino agreed to pay [Appellants] $1,000 for each cadaver. N.T. 9/2/08 at 28. When Mr. Mastromarino and his cutters came to Philadelphia, [Appellants] would direct them to the bodies in the embalming rooms of their funeral homes. N.T. 9/2/08 at 29–30. There, Mr. Mastromarino and the cutters would remove the cadavers' arms, legs, bones, ligaments, tendons, and skin, often leaving only a head and a bloody torso behind in a bag for cremation. N.T. 9/2/08 at 28–29.

Between visits from Mr. Mastromarino and his cutters, cadavers destined for harvesting would sit in an alley, unrefrigerated, for days. N.T. 9/2/08 at 29, 32–33. [Appellants] never provided Mr. Mastromarino or his cutters with death certificates, identification, consent forms, or the names of the bodies' next of kin. N.T. 9/2/08 at 30–33. Although Mr. Mastromarino told [Appellants] that the tissue was destined for medical use and the cadavers had to be of individuals who were less than seventy-five years old and disease-free when they died, [Appellants] provided cadavers of individuals who were more than eighty years old and sick with cancer, H.I.V., and hepatitis at the time of their passing. N.T. 9/2/08 at 27, 31, 34. Over the course of their arrangement with Mr. Mastromarino, [Appellants] provided more than 244 cadavers and received more than $245,000 in return. N.T. 9/2/08 at 27–28.

In September 2005, Mr. Mastromarino learned that the FDA was investigating his activities and instructed [Appellants] to burn their funeral homes to the ground to destroy the evidence of their enterprises. N.T. 9/2/08 at 34. Instead, [Appellants] incinerated their records in the crematory oven mere days before the arrival of FDA investigators, and told the investigators that their records had been destroyed by a flood. N.T. 9/2/08 at 34–35.

In addition to providing bodies to Mr. Mastromarino, [Appellants] pursued other criminal activity. N.T. 9/2/08 at 35–41. [Appellants] defrauded the Pennsylvania Department of Public Welfare ("PDPW") by filing false forms seeking reimbursement for providing funeral services to the indigent when they actually already had been compensated for those services by their clients. N.T. 9/2/08 at 35–37. For each false claim, Gerald and Louis sought the maximum amount of $750 and overall received $51,750 and $25,250, respectively. N.T. 9/2/08 at 35–37. In addition, shortly after he surrendered his funeral home director license, Louis filed a disability claim, falsely asserting that he had not been able to work due to extreme depression since March 1, 2006. N.T. 9/2/08 at 37. Between September 2006 and September 2007, Louis filed an additional seven claims for disability while he continued to operate the funeral home, receiving $18,300 in benefits. N.T. 9/2/08 at 38–39.

Trial Court Opinion filed 6/1/09 at 2–4 (footnote omitted) (footnotes added).

¶ 3 The Commonwealth submitted this case to the Grand Jury, which recommended multiple charges be filed against Appellant Louis Garzone, who was then arrested. Trial was scheduled for Septem-

ber 2, 2008, and represented by counsel, Appellant informed the Commonwealth that he intended to proceed to trial with Co–Defendant Gerald Garzone, despite the fact Lee Cruceta, who led the "cutters," Mr. Mastromarino, and Mr. McCafferty had advised the Commonwealth they intended to plead guilty and cooperate with the Commonwealth. Thus, the Commonwealth prepared its numerous witnesses for trial, with an estimated trial length of three months. *See* Trial Court Opinion filed 6/1/09 at 6 n. 5.

¶ 4 However, on September 2, 2008, Appellant pleaded guilty to the charges indicated *supra*. With regard to the terms of Appellant's guilty plea, the following relevant exchange occurred:

THE COURT: All right. Let me start with you, Mr. Louis Garzone. It is my understanding, sir, that you have an agreement with the Commonwealth pursuant to which in exchange for your plea of guilty to the charges that I have reviewed with you that the Commonwealth is going to drop all the remaining charges in the Bill of Information against you.

In addition, it is part of this agreement that you will be forfeiting, or agreeing to forfeit, the property that is located at 1830 East Somerset Street and you will be providing the necessary signature to accomplish that forfeiture.

I am also told as part of this agreement that you have agreed to pay restitution in the amount of $144,000 with regard to all of the charges, apart from the disability fraud charge. And in addition to that, $18,000 with regard to the disability fraud aspect of the case.

With regard to sentence, it is my understanding, sir, that there is no agreement as to sentence other than with regard to the forfeiture and restitution. Commonwealth will be free to recommend any sentence that it deems to be appropriate.

Is that your understanding of the agreement, sir? Did I get that right?

[APPELLANT] LOUIS GARZONE: Yes, Your Honor.

[ASSISTANT DISTRICT ATTORNEY]: If I may, Your Honor?

THE COURT: You may.

[ASSISTANT DISTRICT ATTORNEY]: The agreement is also forfeit the property at 2778 Ruth Street.

THE COURT: You're right. Thank you. I did miss that. I am sorry.

In addition, as was just pointed out, you have also agreed to forfeit the property at 2778 Ruth Street, which is the location of the crematorium. Okay?

[APPELLANT] LOUIS GARZONE: Yes.

THE COURT: All right, sir. As amended, would that be the agreement as you understand it, sir?

[APPELLANT] LOUIS GARZONE: Yes.

THE COURT: Did I get the agreement correct, [defense counsel]?

[DEFENSE COUNSEL]: Yes.

THE COURT: [Assistant District Attorney], is that the agreement?

[ASSISTANT DISTRICT ATTORNEY]: Yes.

N.T. 9/2/08 at 42–44 (bold in original).

¶ 5 On October 22, 2009, Appellant proceeded to a sentencing hearing, at the conclusion of which the trial court sentenced Appellant to an aggregate of eight years to twenty years in prison. N.T. 10/22/09 at 270–272. The trial court noted that "restitution will be ordered in the amount agreed upon." N.T. 10/22/09 at 272. During the sentencing hearing, the Commonwealth requested that the trial court "consider requiring the defendants

to pay cost of prosecution or a portion [thereof] ... [as] the Commonwealth did have to prepare for trial." N.T. 10/22/09 at 272. The trial court indicated that it "had been doing this for 27 years. I never saw anybody ask for cost of prosecution on guilty plea[.]" N.T. 10/22/09 at 273. The trial court specifically denied the request. N.T. 10/22/09 at 273.

¶ 6 On October 31, 2008, the Commonwealth filed a "Motion to Reconsider Expenses Incurred by District Attorney," claiming total costs for Appellant and Co–Defendant Gerald Garzone in the amount of $17,844. By order entered on December 2, 2008, the trial court granted the Commonwealth's motion to reconsider expenses and ordered the Commonwealth to prepare a list of costs. On December 18, 2008, the Commonwealth filed a "Motion to Amend Its Motion To Reconsider Expenses Incurred By District Attorney," claiming expenses for the assistant district attorneys' salaries, the county detectives' salaries, and the grand jury totaling $373,183 for Appellant and Co–Defendant Gerald Garzone.

¶ 7 On January 14, 2009, Appellant filed a counseled motion seeking a modification of sentence in accordance with the Recidivism Risk Reduction Incentive (RRRI) program.[4] On January 22 and 29, 2009, the matter proceeded to hearings, at which the trial court heard argument as to whether Appellant was eligible for an RRRI sentence, as well as the total amount Appellant should pay in expenses for the district attorneys' salaries, the county detectives' salaries, and the grand jury costs. During the January 29, 2009 hearing, the following relevant exchanged

occurred regarding the imposition of the expenses:

**THE COURT:** So it seems to me, having [granted the Commonwealth's motion] and not inclined to change that decision, what I have to do then is to award, according to what the cases tell me, what costs were reasonably necessary for the prosecution and not within the ambit of usual services provided absent extraordinary circumstances.

And when I look over your list of proposed costs and I did also read the Dupont case which I frankly had not seen, it would seem to me that what would be reasonably necessary and what the Commonwealth could properly claim would be those costs you've laid out here assuming you could establish and they're not disputed you've actually incurred them for the different items that are set forth in the bill of costs that you've presented.

With regard to the salaries, it would appear to me that what would be reasonable to do here and what I am willing to do is, if you have people who were working only on this case, in other words, I don't see a reason distinction between hiring a special assistant and having a person work entirely on one case or hiring or taking an assistant district attorney and having that person devote a hundred percent of that person's time to the case.

I think if you go down the road of starting to parse out the time spent by people who are employees of the District Attorney's Office and trying to award that as costs, that's not what traditional-

---

4. Effective November 24, 2008, the Legislature enacted 44 Pa.C.S.A. §§ 5301–5312 regarding the RRRI, which seeks to ensure appropriate punishment for persons who commit crimes while encouraging prisoner participation in programs which reduce the risk of future crime. Effective October 13, 2009, the Legislature repealed 44 Pa.C.S.A. §§ 5301–5312, and replaced it with 61 Pa. C.S.A. §§ 4501–4512, as well as added 42 Pa.C.S.A. § 9756(b.1).

ly we think of as being costs. It's something special to this case.

And I do think it's extraordinary that, if the case is so complex and so demanding, that you have a person or persons who were doing nothing other than that.

So I think that is an extraordinary circumstance, and if you can establish that is so and what it was those people were compensated, I believe you would be entitled to recover that.

I don't believe that you would be entitled to recover salaries of people who were working on this as well as other matters in the District Attorney's Office, and I wouldn't sit here and try to figure out how much time did they spend on this case, how much time did they spend on other cases. I haven't seen a court do that, and that doesn't seem to me to be the kind of extraordinary circumstances that would merit the award of costs. It seems to me that falls within the ambit of the usual services provided type language.

So that's what I'm willing to do. So within that ruling, why don't we go over your list and see what the defense is willing to say they agree that they should pay. They certainly don't have to agree they're recoverable costs. They're preserving that issue. Now the issue is are those amounts reasonably necessary.

[APPELLANT'S ATTORNEY]: Your Honor, there's also the issue here that substantial financial penalties were negotiated.

THE COURT: I'm going to reach that. That's true. All right. That is a preliminary matter. If, in fact, there was an agreement and you reasonably believed that it covered all aspects of this case, then I would not award any costs.

But the problem is—and after receiving your letter I did go back to the notes

from the guilty plea because I couldn't recall exactly what had been said, and I do have it here, I stated the agreement on the record, and the money was for restitution.

\*　　\*　　\*

The point is agreement. Is there an agreement as to anything other than forfeiture and restitution? And everybody said no, there's no agreement.

[APPELLANT'S ATTORNEY]: Absolutely there was none.

THE COURT: So now I'm hearing that you believe there may have been.

[APPELLANT'S ATTORNEY]: No, I am not saying there was an agreement, and I'm not saying I was misled by the District Attorney's Office.

What I am saying is that substantial negotiation concerning the financial aspects of this case, and the negotiation included a forfeiture of nonforfeitable property here. This was the mere location of crime. That would not have been forfeitable under the law. Restitution was paid far in excess of any claim of loss by the denominated victims here. Basically the restitution was returned of any money that they made on the whole thing.

Now, I'm not saying this was sharp dealing. What happened was before sentencing occurred, there was no consideration. What we really have here is double dipping, that after the sentence occurred, then they come in and say we want more than what we bargained for.

And if indeed substantial additional monetary penalties were going to be imposed, it should have been considered and certainly should have been part of the colloquy. Do you know, sir, that, yes, you're forfeiting your house, you're forfeiting property worth over a hundred thousand dollars, you're making

restitution, but the DA might come in and say you got to pay for this whole thing?

When the Court set its actual sentence here, I recalled distinctly, when you imposed the time you said you took into consideration the monetary penalties that were being enforced upon the [appellant.] I would dare say that if indeed they were coming in and asking for an extra hundred thousand dollars or so, that would have been part of the consideration also.

\* \* \*

THE COURT: Now, maybe this is the kind of thing that would have been better to discuss when you were negotiating those penalties, but as we look through all these cases, there have been many instances including several high-profile cases where very substantial costs of prosecution were imposed.

[APPELLANT'S ATTORNEY]: But there's never been a case where the salaries of DA's and county detectives or the fees of grand jurors have been awarded, never one, never been one.

\* \* \*

THE COURT: Well the only difference in Dupont is that that was a special assistant district attorney that was hired while they were trying to fill the other spots.

In a way, as they point out, this case is stronger if they can establish that the person was working exclusively on it because, under my ruling, I wouldn't even award the money of that special assistant because he was working on more than one case, and I don't think the courts should be in the business of figuring out how many minutes and hours did ADA Jones spend working on the Smith case. I'm not going to—I

don't think we want to go down that road.

But if you have a case, and there's only a few of them that have ever come along, one or two a year, and I've seen them, and this was one of them where they were so complicated, so difficult to prove and also important that the Commonwealth is willing to devote a hundred percent of the resources of some people to it, in a situation like that, that's extraordinary. And the question is, Who should bear the cost?

\* \* \*

[APPELLANT'S ATTORNEY]: And as to their claim for grand jury expenses—

THE COURT: That's a different issue. Do you want to move on to that now?

[APPELLANT'S ATTORNEY]: That's not even an expense. The county pays the grand jury. This talks about DA recovery of its costs. The DA doesn't pay the grand jurors.

As they see it, the DA's Office essentially would be a self-funding organization. They would assign one person to work on a case, and then the defendant would end up paying for the thing.

THE COURT: No. It's in the extraordinary kind of a case that's so time-consuming and so demanding as this one was that it consumes somebody's time. I think this is an unusual situation.

Let's move on to the grand jury situation. Why would you be entitled to those costs?

[ASSISTANT DISTRICT ATTORNEY]: Your Honor, that came from the Larsen case. I think they charged a tenth of the cost of the grand jury.

THE COURT: Well, they did. Does it make a difference that that was a multi-county grand jury?

[ASSISTANT DISTRICT ATTOR-NEY]: I can't see why.

\* \* \*

[APPELLANT'S ATTORNEY]: Your Honor, my major point is we had a sentencing hearing here where Your Honor considered all the financial ramifications, they were not only agreed to, that were paid, imposed a sentence.

Now, they're coming back week after week saying this is covered, that is covered, and they're arguing for things that they have never argued for.

I guarantee you the Court has never heard an application for these types of costs. Nobody has paid them. And, in fact, I've never heard of costs being imposed where somebody pled guilty.

\* \* \*

THE COURT: They moved for reconsideration. They presented many cases showing it had been done. It appears I exercise my discretion.

I'm not condoning filing a petition asking for $17,000 and then asking for $100,000. You know, I don't understand why that was done. I really I truly don't, and frankly that disturbs me.

But as I read these cases, I either award nothing or I award what was reasonably necessary, and I don't think I have a middle ground here. So I have to make that decision. And when I look at these materials that have been presented to me, these things seem to be reasonably necessary, so that's what I'm going to do.

[CO–DEFENDANT'S ATTORNEY]: Your Honor, just on the issue of what the Court said earlier, if there would be a scenario where the DA misled us, there would be no costs. I'm not arguing at all that that was the case.

But I will state unequivocally that I had many meetings with Bruce· Sagel from almost day one of the case, that the defense team had meetings with Ms. Manos when she took over and her team, and at least it was my belief that we had a tacit understanding that we would attempt to resolve this case, albeit at the 11th, we would attempt to resolve it and avoid a two-month trial.

In all candor, Judge, I'm not going to stand here and say that the thousands of years in prison that my client was exposed to was not my primary concern. On a pie chart, it was a 99.9 percent of my concern. But monetary issues were discussed, and a substantial payment was made by Mr. Garzone.

The third defendant, Judge, the third defendant I believe, and this came into late discussions, I think the number was $388,000 that was out there that we believe in an aggregate number, we were told that the third defendant who would agree to cooperate and plead was paying a hundred, so it reduced us to 288.

That 288 number we had a mechanism to come up with what it was for, but as Mr. Morris said, it far exceeds anything that can be, you know, vis-à-vis what the people actually lost. We just paid it because we thought that that was going to end the case. I don't know what the third defendant has paid or if he's paid or if they've asked for this from him.

But, Judge, when we had these meetings, I'm not for a minute saying we were misled. When we walked out of the meetings, we talked about open pleas facing thousands of years because we couldn't come to an agreeable number on a sentence to recommend to Your Honor, and we also talked about $288,000 that these gentlemen would divide between them.

I think just as a practical matter, Judge, we're not talking about, you

know, a hundred dollars in costs. When we agree to pay $288,000 we thought it was over and that's—I'm not saying we were misled, but that's what we believed.

[APPELLANT'S ATTORNEY]: Your Honor, one final sentence agreeing with that. We weren't misled in that nobody at the time we wrapped up everything, the only open issue that we considered or that they considered was before the Court was how much time we were going to impose. Nobody thought about costs. Nobody considered it an issue. It was not presented to the Court as a substantial issue at the time of sentencing. It's only come up afterward.

THE COURT: Well, you know, one thing that you're hinting at but I don't think you explicitly said which I hadn't thought about is I don't think any of these cases that have the huge recoveries, I'm talking about anything within a couple of thousand dollars, were guilty pleas, and I do wonder if there's an issue as to whether the plea is knowing and voluntary if the defendant isn't apprised of the fact that a hundred thousand dollars in costs might be a result of the plea on top of everything else. It never was. And those things are generally not done, but they're usually de minimis.

And the cases where there's thousand and thousands of dollars recovered, those are trials, and it doesn't matter because you're going to award the costs anyway.

[ASSISTANT DISTRICT ATTORNEY]: Judge, if I may [clarify.] . . . This isn't a case where everything was negotiated. I mean, as counsel has stated, we discussed certain aspects of our plea which were negotiated, but everything else was left open to the Court. And that's clearly what was understood or at least what you asked the [appellants] and said that they understood. They were open as to years. They were open clearly as to any fines. Your Honor could still have imposed fines on them.

THE COURT: There was no agreement as to fines.

[ASSISTANT DISTRICT ATTORNEY]: There was no agreement as to fines, so Your Honor clearly could have imposed costs of prosecution and an additional fine.

\* \* \*

THE COURT: I'm looking at the colloquy here, the only agreement was as to forfeiture and restitution. I could have imposed huge fines in this case. I didn't impose any fines whatsoever.

I did exercise my discretion and said I would award costs. Commonwealth incurred a lot of costs. I'm going to go ahead and order the costs. Let's go over what your figures are.

\* \* \*

N.T. 1/29/09 at 35–44, 51–52, 55–57, 70 (bold in original).

¶ 8 With regard to Appellant, the Commonwealth indicated the total amount of costs was $84,796 for the salaries of the assistant district attorneys and county detectives who worked on Appellant's case and $5,305 for the grand jurors. N.T. 1/29/09 at 77. At the conclusion of the hearings, the trial court directed Appellant to pay a total of $90,101 for these expenses. N.T. 1/29/09 at 77. The trial court concluded Appellant was eligible for an RRRI sentence, imposed an RRRI sentence of 8 years, and indicated the new aggregate sentence was 9.6 years to 20 years in prison.

¶ 9 On January 30, 2009, the Commonwealth filed a motion to correct a mutual mistake in sentencing contending that Appellant was not eligible for an RRRI sen-

tence, and by order filed on that same date, the trial court corrected Appellant's prison sentence to impose an aggregate term of eight years to twenty years in prison, with no RRRI minimum.[5] Appellant filed a counseled appeal to this Court on February 20, 2009. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement, Appellant timely complied, and the trial court filed a responsive Pa.R.A.P.1925(a) opinion.

¶ 10 Before addressing the issues presented on appeal, we first address this Court's jurisdiction. As indicated *supra*, Appellant's judgment of sentence was originally imposed on October 22, 2008. Thereafter, on October 31, 2008, the Commonwealth sought to modify Appellant's sentence to include expenses related to prosecutorial costs. *See Commonwealth v. Larsen*, 452 Pa.Super. 508, 682 A.2d 783 (1996) (indicating costs are "penal sanctions" arising from a criminal conviction and, therefore, the imposition of costs are part of the judgment of sentence). Pursuant to Pa.R.Crim.P. 721, we conclude the Commonwealth filed a timely motion for modification of sentence. *See* Pa. R.Crim.P. 721(A)(1) ("The Commonwealth may challenge a sentence by filing a motion to modify sentence, by filing an appeal on a preserved issue, or by filing a motion to modify sentence followed by an appeal."); Pa.R.Crim.P. 721(B)(1) ("A Com-

monwealth motion for modification of sentence shall be filed no later than 10 days after imposition of sentence."). Thereafter, the trial court had 120 days to dispose of the Commonwealth's motion to modify sentence, Pa.R.Crim.P. 721(C)(2), which it did in this case. After the trial court granted the Commonwealth's motion for modification and modified Appellant's sentence to include the prosecutorial expenses, Appellant had thirty days to file an appeal to this Court, which Appellant did in this case. *See* Pa.R.Crim.P. 720 ("If the Commonwealth files a timely motion to modify sentence pursuant to Rule 721, the defendant's notice of appeal shall be filed within 30 days of the entry of the order disposing of the Commonwealth's motion."). Therefore, this appeal is properly before us as an appeal from a judgment of sentence, which was imposed on January 30, 2009,[6] after the trial court granted the Commonwealth's timely motion to modify Appellant's sentence to include expenses sought by the prosecution. *See Commonwealth v. Wesley*, 889 A.2d 636 (Pa.Super.2005) (where the Commonwealth filed a timely motion to modify the appellant's sentence to include restitution, and the trial court granted the motion and resentenced the appellant within 120 days, the appellant's appeal was an appeal from the amended judgment of sentence).[7] We now

---

**5.** The prison term imposed by the trial court on January 30, 2009 was the same prison term as that which the trial court had previously imposed on October 22, 2008.

**6.** The trial court originally entered a judgment of sentence on January 29, 2009; however, as discussed, the trial court corrected the sentence on January 30, 2009. We conclude the trial court had jurisdiction to amend the sentence one day later. *See* 42 Pa.C.S.A. § 5505.

**7.** On January 14, 2009, Appellant filed a motion seeking a modification of sentence in

accordance with the RRRI. The motion presented a legality of sentencing claim as to whether the trial court had the authority to sentence Appellant under the RRRI, and although the trial court initially sought to grant the motion, one day later, on January 30, 2009, the court entered an order finding Appellant not to be eligible under the RRRI. Since this Court may *sua sponte* raise issues concerning legality of sentencing, we briefly note that, assuming, *arguendo*, the RRRI is applicable to Appellant's case, Appellant is not an eligible offender since he pled guilty to recklessly endangering another person. *See* 61 Pa.C.S.A. § 4503(3) (a defendant is an

turn to a resolution of the issues presented on appeal.

¶ 11 Appellant first contends the trial court had no authority to impose as "costs of prosecution" the salaries of the assistant district attorneys or the county detectives, who worked on Appellant's case. Specifically, Appellant contends the salaries fell within the ambit of non-extraordinary usual services, and were not necessary expenses incurred by the district attorney in connection with Appellant's prosecution, since the salaries at issue were going to be paid regardless of whether Appellant ever committed a crime.

■ ¶ 12 Initially, we note that, inasmuch as Appellant's argument is premised upon a claim that the trial court did not have the authority to impose the costs at issue, Appellant has presented a legality of sentencing claim. *See In the Interest of M.W.*, 555 Pa. 505, 725 A.2d 729 (1999) (holding claim the trial court did not have the statutory authority to impose restitution presents legality of sentencing claim, whereas claim restitution amount is excessive presents discretionary aspect of sentencing claim);[8] *Commonwealth v. Allshouse*, 924 A.2d 1215 (Pa.Super.2007), *affirmed*, —— Pa. ——, 985 A.2d 847 (2009) (claim trial court did not have the authority to impose costs presented challenge to legality of sentence). "The determination as to whether the trial court imposed an illegal sentence

is a question of law; our standard of review in cases dealing with questions of law is plenary." *Commonwealth v. Nuse*, 976 A.2d 1191, 1193 (Pa.Super.2009) (quotation marks and quotation omitted).

■ ¶ 13 Turning first to that portion of the sentence directing Appellant to pay the assistant district attorneys' salaries, we conclude that, in essence, the trial court directed Appellant to pay the Commonwealth's legal expenses, which is akin to an order directing a party to pay the other litigant's attorney's fees.

This Court has consistently followed the general, American rule that there can be no recovery of attorneys' fees from an adverse party, absent an express statutory authorization, a clear agreement by the parties or some other established exception.

\* \* \*

Certainly, as a matter of common parlance, attorneys' fees may be considered a form of "cost" or "expense" to a litigant. As noted, however, a statutory provision must be explicit in order to allow for the recovery of this particular form of expense.

*Merlino v. Delaware County*, 556 Pa. 422, 425–26, 728 A.2d 949, 951 (1999) (citations omitted).[9] To this end, 42 Pa.C.S.A. § 1726(a)(1) specifically indicates that "[a]ttorney's fees are not an item of taxable costs except to the extent authorized

8. In this case, Appellant has not alleged the amount of the costs was excessive; but rather, the court did not have the authority to impose the costs.

9. In this case, it is undisputed that there was no clear agreement between the parties indicating that Appellant would pay attorneys' fees or salaries associated with the District Attorney's Office and there has been no other "established exception" presented to this Court.

eligible offender if the "has not been found guilty of or previously convicted of or adjudicated delinquent for or an attempt or conspiracy to commit a personal injury crime as defined under section 103 of the act of November 24, 1998, [which is found at 18 P.S. § 11.11.103]."); 18 P.S. § 11.103 (defining "personal injury crime" to include those found in 18 Pa.C.S. Ch.27); 18 Pa.C.S.A. § 2705 (setting forth the crime of recklessly endangering another person).

by section 2503 (relating to the rights of participants to receive counsel fees)." While Section 2503 provides ten instances where attorney's fees are "taxable costs," the only provision relevant to this case is Subsection 2503(10), which provides: "The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter: . . . (10) Any other participant in such circumstances as may be specified by statute heretofore or hereafter enacted." In the present case, the specified statutes at issue, which provide the nucleus to hold convicts responsible for paying the costs in connection with their prosecution, are 19 P.S. § 1223 and 16 P.S. § 7708.[10]

¶ 14 The statute which originally made all persons convicted of a crime liable for the costs of their prosecution was 19 P.S. § 1223, which provided that ". . . in all cases of conviction of any crime, all costs shall be paid by the party convicted."

> This section has been repealed and replaced by the Act of July 9, 1976, P.L. 586, No. 142, § 2, eff. June 27, 1978, 42 Pa.C.S.A. § 1726, which provides that the Pennsylvania Supreme Court "shall prescribe by general rule the standards governing the imposition and taxation of costs, including the items which constitute taxable costs [and] the litigants who shall bear such costs. . . ." Our high Court has yet to promulgate such standards, which activates the Judicial Code (42 Pa.C.S.A. § 20003(b)) [11] to preserve

19 P.S. § 1223 as part of our common law.

*Larsen*, 682 A.2d at 795 (footnote added).

¶ 15 Since 19 P.S. § 1223 simply permits the taxation of costs without specifying the type of costs which may be taxed, the legislature has enacted numerous statutes permitting or requiring costs in certain circumstances. *See, e.g.* 42 Pa.C.S.A. § 1725.3 (convicted defendant to pay criminal laboratory fee, as well as cost to send lab technician to court proceedings); 18 Pa.C.S.A. § 1109 (court may order offender to pay the cost of any reward paid for the apprehension and conviction of the offender). Relevant to this case is 16 P.S. § 7708, pursuant to which a defendant is obligated for the costs of prosecution and trial by the district attorney, with the amount to be paid initially by the county subject to reimbursement by the defendant. *See Larsen, supra.* Specifically, 16 P.S. § 7708 provides the following:

> All necessary expenses incurred by the district attorneys of any county of this Commonwealth or his assistants, or any officer directed by him, in the investigation of crime and the apprehension and prosecution of persons charged with or suspected of the commission of crime, shall be paid by the respective counties, out of moneys in the county treasury, upon the approval of the bill of expense by the district attorney and the court of their respective counties. And in cases where a defendant is convicted and sentenced to pay the costs of prosecution

---

**10.** We note that the Sentencing Code provides, in relevant part, that "[a]ny . . . costs associated with the prosecution, shall be borne by the defendant. . . ." 42 Pa.C.S.A. § 9728(g). In the case *sub judice*, the issue is whether the costs are associated with the prosecution such that the costs must be borne by Appellant.

**11.** Section 20003 provides, in relevant part:

If no such general rules are in effect with respect to the repealed statute on the effective date of its repeal, the practice and procedure provided in the repealed statute shall continue in full force and effect, as part of the common law of the Commonwealth, until such general rules are promulgated.

*Commonwealth v. Gill*, 288 Pa.Super. 538, 432 A.2d 1001, 1004 n. 12 (1981)(*quoting* 20003 of the Judiciary Act Repealer Act).

and trial, the expenses of the district attorney, in connection with such prosecution, shall be considered a part of the costs of the case and be paid by the defendant.

16 P.S. § 7708.

¶ 16 By its express terms, 16 P.S. § 7708 requires all necessary expenses incurred by the district attorney, or his assistants, or any officer directed by him for the purposes of investigating a crime, apprehending the suspect, and/or prosecuting the person charged with the crime, are to be paid by the respective counties with money from the county treasury. *See* 1 Pa.C.S.A. §§ 1903, 1921. Moreover, when a defendant is convicted of a crime and sentenced to pay "the costs of prosecution," such costs shall include the necessary expenses of the district attorney incurred in connection with the prosecution. *See* 1 Pa.C.S.A. § 1921. At issue here is whether the salaries of the assistant district attorneys, who worked exclusively on Appellant's case for a period of time, are "necessary expenses" of the district attorney "incurred in connection with the prosecution." Giving the relevant statutes their plain meaning, and examining existing precedent interpreting 16 P.S. § 7708, as well as 16 P.S. § 1403, which has virtually identical language as 16 P.S. § 7708,[12] we conclude the salaries of the assistant district attorneys in this case were not necessary expenses incurred by the district attorney's office in connection with Appellant's prosecution.

¶ 17 For example, in *Commonwealth v. Hower,* 267 Pa.Super. 182, 406 A.2d 754 (1979), the appellant was ordered to pay, *inter alia,* expenses incurred by the district attorney in hiring a surveyor and physicist. The trial court concluded the appellant should be required to pay those costs which were necessary to the prosecution, and this Court agreed.

¶ 18 In *Commonwealth v. Coder,* 490 Pa. 194, 415 A.2d 406 (1980), the appellant was taxed with the costs of prosecution, which included costs accrued in connection with a change of venue, granted on the appellant's motion, from Lycoming County to Mercer County, which was approximately 230 miles away. Pursuant to 19 P.S. § 1223 and 16 P.S. § 1403, the Supreme Court concluded the trial court was authorized to require the appellant to pay $8000.00 in expenses associated with the change of venue. In so holding, the Supreme Court noted that the purpose of the statutes is to recoup the necessary expenses associated with a defendant's prosecution.

¶ 19 In *Commonwealth v. Cutillo,* 294 Pa.Super. 560, 440 A.2d 607 (1982), the appellant contended a bill of costs taxed against him was improper since it included charges incurred in guarding the appellant while he was hospitalized. The Commonwealth presented evidence that, after an assistant district attorney determined it was necessary to guard the appellant while he was hospitalized, the district attorney's office hired a constable service to provide guards since neither the Pennsylvania State Police nor the Chester County District Attorney's Office had the manpower to guard the appellant. The constable service submitted bills for their services, and after the appellant was convicted of various crimes, the trial court ordered the appellant to pay the bills, which represent-

12. 16 P.S. § 7708 applies specifically to counties of the first class, which Philadelphia County is categorized. *See Wecht v. Roddey,* 815 A.2d 1146 (Pa.Cmwlth.2002) (indicating Philadelphia is a county of the first class). 16 P.S. § 1403, which has virtually identical language as Section 7708, applies to other counties, with the exception of second class counties, which is governed by 16 P.S. § 4403.

ed necessary expenses incurred by the district attorney's office in connection with the prosecution of the appellant under 16 P.S. § 1403. In affirming, this Court noted the following:

We find that the money expended was necessary for the prosecution of the crimes for which [the appellant] was charged. Considering the circumstances, the Assistant District Attorney was justified in determining that guards were necessary in order to eliminate any possibility that the appellant might try to leave the hospital and attempt to avoid prosecution.

We are not, however, giving leave to the lower courts to assess any and all possible costs against a convicted defendant. In determining the taxability of specific costs of prosecution, the trial court must carefully examine each case in toto. Assessable costs are those which are necessary for prosecution when considered in light of the peculiar facts and circumstances of each case as done herein on review. Those costs which fall within the ambit of usual services provided may not be taxed against a convicted defendant absent extraordinary circumstances. Of course, costs which have traditionally been assessed subsequent to conviction remain untouched by our decision in the instant case.

*Cutillo*, 440 A.2d at 609.

¶ 20 In *Commonwealth v. Larsen*, 452 Pa.Super. 508, 682 A.2d 783 (1996), the appellant was ordered to pay the costs involving the convening of a multi-county grand jury, witness fees, clerk of court costs, and attorney's fees. On appeal, the appellant argued that he was immunized from costs because the statute governing multi-county grand juries, 42 Pa.C.S.A. § 4553(b), makes an inter-governmental allocation of those costs to the state. In rejecting the appellant's argument, this Court found that, once a defendant is convicted of a crime, he may be required to pay the costs of prosecution under 19 P.S. § 1223 and 16 P.S. § 1403, which initially allocate costs to the counties, subject to re-allocation to convicted defendants. Noticeably absent from *Larsen* was any specific discussion with regard to the type of costs imposed upon the appellant. That is, there was no issue presented to this Court as to whether any of the costs, and in particular the "attorney's fees," were necessary expenses incurred in connection with the prosecution. Rather, *Larsen* held generally that costs may be imposed upon a convicted defendant, who was indicted by a multi-county grand jury. Inasmuch as there was no discussion in *Larsen* as to how the attorney's fees were acquired in that case, and it was undisputed that all of the costs were necessary "costs of prosecution," we find no evidence in *Larsen* that 19 P.S. § 1223 and 16 P.S. § 1403 require a convicted defendant to pay the costs associated with the assistant district attorneys' salaries under circumstances such as those presented in the case *sub judice.*

¶ 21 In *Commonwealth v. duPont,* 730 A.2d 970 (Pa.Super.1999), the appellant contended a bill of costs taxed against him was excessive since it included the cost of a special assistant district attorney and several legal interns, who were hired by the district attorney's office due to two vacancies in the office during the initial stages of the prosecution. This Court concluded the district attorney's office incurred necessary expenses in connection with the prosecution by hiring the additional personnel and, therefore, under 16 P.S. § 1403, the costs were properly assessed as part of the appellant's judgment of sentence.

¶ 22 In *Commonwealth v. Smith,* 901 A.2d 1030 (Pa.Super.2006), the appellant

challenged the trial court's authority to order the appellant to pay as "costs of prosecution" his pro rata share of buy money,[13] which was not recovered after the police used it in controlled buys of narcotics. In concluding the trial court had the authority to impose the costs, this Court held the "buy money expended by officers in furtherance of their investigation and apprehension of persons suspected of crime are reasonable costs of prosecution within the purview of [16 P.S.] § 1403, if such funds are not recovered by drug enforcement officers prior to the time of sentencing." *Smith*, 901 A.2d at 1033.

¶ 23 In *Commonwealth v. Coleman*, 905 A.2d 1003 (Pa.Super.2006), the Pennsylvania Office of Attorney General investigated a complaint that the appellant was submitting time sheets to a state and federally funded program in order to receive paychecks for Angela Light, who was a deceased employee of the program. During the course of the investigation, the Office of Attorney General engaged handwriting experts and, after the appellant was convicted of various crimes, she was ordered to pay $18,331.90 for the expenses incurred by the Office of Attorney General in investigating the crimes. This Court held that, under 16 P.S. § 1403, the trial court had the authority to require the appellant to pay the expenses as a necessary expense incurred by the Office of Attorney General in connection with the appellant's prosecution.

¶ 24 As is evident, in those cases where this Court has determined the cost at issue was a "cost of prosecution" pursuant to 16 P.S. § 1403, the counterpart to 16 P.S. § 7708, a reimbursable expenditure was made in connection with the prosecution. In fact, this Court has specifically held that, giving 16 P.S. § 1403 a common sense interpretation, "the statute explicitly permits a District Attorney to be reimbursed for expenses incurred in prosecuting cases[.]" *Commonwealth v. Moran*, 450 Pa.Super. 283, 675 A.2d 1269, 1272 (1996). Here, as Appellant suggests, whether Appellant ever committed a crime, let alone was convicted of such, the assistant district attorneys' salaries were going to be paid out of the county treasury,[14] and therefore, the salaries were not expenditures made in connection with Appellant's prosecution.

¶ 25 Moreover, by its plain language, and is evident by the cases discussed *supra*, 16 P.S. § 7708 permits reimbursement for only "necessary expenses" incurred in connection with the prosecution. The burden of proving that the expenses were necessary and in connection with the prosecution rests with the Commonwealth. *See Coder, supra.* Here, the Commonwealth contends the expenses associated with the assistant district attorneys' salaries were necessary expenses since Appellant's crimes were complex, requiring extensive investigation and involving numerous witnesses, who needed to be prepared for the purpose of trial. However, to accept the Commonwealth's position would, in effect, make the District Attorney's Office operate as a private law firm using billable hours. Clearly, this was not the intent of the Legislature in enacting the statutes cited *supra*.

¶ 26 As discussed *supra*, the settled rule is that costs associated with legal expenses

---

13. "[B]uy money are official funds from the police[.]" *Id.* at 1032 (citation to record omitted).

14. *See* 16 P.S. § 7721 (setting forth district attorney's authority in county of the first class to hire assistant district attorneys and setting forth the salary to be paid for the assistants out of the county treasury).

may be recovered only when agreed to by the parties or expressly provided for by a statute. *See Commonwealth v. Harner,* 533 Pa. 14, 617 A.2d 702 (1992). Since none of the statutes relevant to the case *sub judice* make a specific provision for a convicted defendant to pay the salaries of assistant district attorneys, whose services fall within the ambit of usual services, it would be inappropriate to read such a provision into the statutes and, essentially, award attorneys' fees under the statutes. Although the crimes in this case are particularly heinous, if the General Assembly intended to permit such recovery of regularly paid salaries of assistant district attorneys and detectives to be costs associated with the prosecution, the Legislature would have expressly done so. *See Merlino, supra* (holding that a statutory provision must be explicit to allow the recovery of attorney's fees as a particular form of expense, and in the absence of express statutory authorization, the legislature's use of the term "expense" in Section 15(b) of the Waste Management Act constituted an insufficient basis to award attorneys' fees under the Act).

¶ 27 We next turn to that portion of the sentence directing Appellant to pay the county detectives' salaries for that portion of time the detectives devoted working hours to Appellant's case. We conclude that 19 P.S. § 1223 and 16 P.S. § 7708 are applicable in that the county detectives were proceeding in accordance with the general directives of the district attorney. *See Smith,* 901 A.2d at 1032–33 ("In that the district attorney is the chief law enforcement officer of a county, we believe that when a drug buy is arranged by police officers, these officers are proceeding in

accordance with general directives from the district attorney of that county."). However, for reasons similar to those discussed *supra,* we conclude the county detectives' salaries fell within the ambit of non-extraordinary usual services and were not expenses incurred by the district attorney in connection with the prosecution of Appellant.[15] Therefore, the detectives' salaries could not be taxed against Appellant as costs of prosecution under 19 P.S. § 1223 or 16 P.S. § 7708.[16]

■ ¶ 28 Finally, Appellant contends the trial court had no authority to impose as "costs of prosecution" the expenses associated with the grand jury since the grand jury fees were paid by the county and not the district attorney. Specifically, Appellant contends the following:

> 16 P.S. § 7708 relates only to expenses of the District Attorney, not to various expenses paid directly by the county. As held in *Fordyce v. Clerk of Courts,* 869 A.2d 1049 (Pa.Cmwlth.2005), a sheriff's transportation costs-being the expense of a third party-simply do not fall within the language or intent of 16 P.S. § 1403 (and thus 16 P.S. § 7708). Thus, the trial court's order here that [Appellant] pay $5305 as costs to the county is without any legal basis whatsoever.

Appellant's Brief at 17.

¶ 29 We conclude Appellant has misinterpreted the Pennsylvania Commonwealth Court's holdings in *Fordyce.*

¶ 30 In *Fordyce,* as part of his sentence, the appellant was directed to pay the costs of prosecution, and the clerk of courts subsequently assessed costs against the appellant, including $300.26 incurred by the sheriff in transporting the appellant

---

**15.** 16 P.S. § 7742 sets forth the salaries for detectives for a county of the first class and directs the salaries shall be paid out of the county treasury.

**16.** In light of our discussion *supra,* we find it unnecessary to discuss Appellant's remaining claims with regard to the imposition of costs relating to the assistant district attorneys' and county detectives' salaries.

from the county prison to the district justice's office, from the prison to the courthouse for sentencing, and from the prison to the state correctional institution after sentencing. The appellant sought to have the costs stricken; however, the trial court found the sheriff's transportation costs to be recoverable. On appeal to the Pennsylvania Commonwealth Court, the appellant contended the costs did not constitute "costs of prosecution." In reversing the trial court, the Commonwealth Court noted that "[th]e Clerk does not dispute that the sheriff's transportation costs do not fall within the meaning of 'costs of prosecution' as referred to in [16 P.S. § ] 1403." *Fordyce*, 869 A.2d at 1052. The Commonwealth Court then noted that, by statute, sheriff's transportation costs shall be paid by the counties. 61 P.S. § 345, 42 P.S. § 21113. The Commonwealth Court acknowledged that initial costs may be paid by the county and then be reimbursed by the convicted defendant under 16 P.S. § 1403; however, such costs must meet the definition of "costs of prosecution."

¶ 31 Contrary to Appellant's assertion, *Fordyce* does not stand for the proposition that expenses paid directly by the county may not be considered as prosecutorial costs under 16 P.S. § 7708. In fact, as indicated, in *Fordyce*, the Commonwealth Court specifically acknowledged that costs may be paid by the county and then be reimbursed by the convicted defendant as costs of prosecution. Moreover, this Court has specifically rejected Appellant's suggestion that expenses, which are paid directly by the county, such as grand jury expenses, may not fall within the ambit of 16 P.S. § 7708. In *Larsen, supra,* this Court held that costs which are initially allocated to counties may then be subject to re-allocation to convicted defendants under 16 P.S. § 1403, the counterpart to 16 P.S. § 7708, if the costs are necessary expenses incurred in bringing him or her to conviction.

¶ 32 Here, Appellant seems to be challenging whether the grand jury expenses were "incurred by the district attorney." Inasmuch as the district attorney convened the grand jury, which resulted in Appellant's guilty plea, we conclude the expenses were "incurred by the district attorney" for purposes of 16 P.S. § 7708. *See Smith, supra* (since the district attorney is chief law enforcement officer of the county unrecovered buy money used by officers fell within purview of Section 7708); *Larsen, supra.* Therefore, we find meritless Appellant's specific contention that the trial court was not permitted to impose expenses related to the grand jury since the expenses were initially paid directly by the county.

¶ 33 For all of the foregoing reasons, we find the trial court erred in directing Appellant to pay as "costs of prosecution" $84,796 for the salaries of the assistant district attorneys and county detectives assigned to the District Attorney's Office. "In light of the error committed by the court, we have the option either to remand for resentencing or amend the sentence directly." *Moran*, 675 A.2d at 1273 (citation omitted). Since the costs of prosecution at issue are not integral to the sentencing scheme, we conclude it is unnecessary to remand this matter and we will remedy the impropriety of the sentence now. *See id.* Accordingly, we vacate that portion of the court's sentence imposing $84,796 in "costs of prosecution" as it relates to the assistant district attorneys' and county detectives' salaries. In all other respects, we affirm the judgment of sentence.

¶ 34 Judgment of sentence affirmed in part and vacated in part. Jurisdiction relinquished.