J-S06045-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID LEE SCHULTZ, SR. | : | |
| | : | |
| Appellant | : | No. 1246 MDA 2022 |

Appeal from the Judgment of Sentence Entered August 23, 2022
In the Court of Common Pleas of Columbia County Criminal Division at
No(s): CP-19-MD-0000105-2022

BEFORE: STABILE, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED MARCH 30, 2023**

David Lee Schultz, Sr. appeals[1] from the August 23, 2022 amended judgment of sentence of 3 to 6 months' imprisonment and a $100 fine and court costs imposed after he was found guilty of indirect criminal contempt[2] of a Protection From Abuse ("PFA") order. After careful review, we affirm the judgment of sentence.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant purports to appeal from the August 4, 2022 judgment of sentence, but his appeal properly lies from the trial court's August 23, 2022 amended judgment of sentence, which imposed a $100 fine and court costs in addition to the original 3 to 6 month term of imprisonment. **See Commonwealth v. Garzone**, 993 A.2d 1245, 1254 n.6 (Pa.Super. 2010) (holding that in cases where the trial court amends the judgment of sentence during the period it retains jurisdiction pursuant to 42 Pa.C.S.A. § 5505, a direct appeal lies from the amended judgment of sentence), **affirmed**, 34 A.3d 67 (Pa. 2012).

[2] 23 Pa.C.S.A. § 6114(a).

The trial court summarized the relevant facts of this case as follows:

> [Appellant] was subject to a [PFA] order. He was ordered to have no contact with his wife. Nevertheless, [on May 3, 2022, Appellant live-streamed] a video of himself on social media. He was musing with unnamed friends about the most painful way to kill someone. The video is horrendously chilling, particularly if you are a person who has already been subjected to violence and who believes the video was directed at her. Although [Appellant] carefully refrains from naming his wife specifically in the video, the video is clear that [Appellant] is directing the comments to only one person. The video was sent to wife by a social media acquaintance who was part of an online survivors of domestic violence group.
>
> [On May 5, 2022,] after wife found out about the video, [Appellant] texted wife accusing her of sending the video to his employer and getting him fired. Wife denied sending the video to the employer.

Trial court opinion, 10/12/22 at 2 (footnote and citations omitted).

Appellant was subsequently arrested in connection with this incident and charged with one count of indirect criminal contempt of the PFA order. The trial court held hearings on the indirect criminal contempt charge on June 8 and August 4, 2022. At the conclusion of the August 4, 2022 hearing, the trial court found Appellant guilty of one count of indirect criminal contempt and sentenced him to 3 to 6 months' imprisonment.

On August 16, 2022, the Commonwealth filed a motion to amend the judgment of sentence. The trial court granted the Commonwealth's motion on August 23, 2022. That same day, the trial court amended Appellant's

judgment of sentence to include a $100 fine and court costs. This timely appeal followed on September 6, 2022.[3]

Appellant raises the following issues for our review:

> 1. Did the Commonwealth sustain [its] burden of proof in finding [Appellant] guilty of indirect criminal contempt?
>
> 2. Did the trial court commit an error of law in allowing the admission of an exhibit which had not been authenticated or complete?

Appellant's brief at 4 (extraneous capitalization omitted).

Appellant first argues that there was insufficient evidence to sustain his conviction for indirect criminal contempt because the Commonwealth failed to prove that he had any contact with the subject of the PFA order, nor "was the victim of the [PFA] order ever mentioned in the video[,] … addressed in the video[, or] … sent a copy of the video by [Appellant] or members of the conversation." Appellant's brief at 8-9.

Our standard of review in evaluating a challenge to the sufficiency of the evidence is as follows:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder

_____

[3] Appellant and the trial court have complied with Pa.R.A.P. 1925.

unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Thomas***, 988 A.2d 669, 670 (Pa.Super. 2009) (citations omitted), ***appeal denied***, 4 A.3d 1054 (Pa. 2010).

A court may hold a defendant in indirect criminal contempt and punish him in accordance with the law where the police have filed charges of indirect criminal contempt against the defendant for violating a PFA order issued pursuant to the domestic relations code. 23 Pa.C.S.A. § 6114(a).

A charge of indirect criminal contempt consists of a claim that a violation of an order or decree of court occurred outside the presence of the court. Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order.

. . . .

To establish indirect criminal contempt, it must be shown that 1) the order was sufficiently clear to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act must have been one prohibited by the order; and 4) the intent of the contemnor in committing the act must have been wrongful.

***Commonwealth v. Padilla***, 885 A.2d 994, 996-997 (Pa.Super. 2005) (citations and internal quotation marks omitted), ***appeal denied***, 897 A.2d 454 (Pa. 2006).

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we find that there was sufficient evidence to sustain Appellant's conviction for indirect criminal contempt of the PFA order. Here,

the order at issue clearly prohibited Appellant, with certain exceptions regarding the parties' child, "from having ANY CONTACT with [victim], or any other person protected under this order either directly or indirectly, at any location, including but not limited to any contact at [victim's] or other protected party's school, business, or place of employment" . . . "by telephone or by any other means...."  PFA order, 2/25/21 at ¶¶ 3-4; Commonwealth's Exhibit No. 1.

During the contempt hearings, the trial court had the opportunity to view an eight-minute segment of a video that Appellant live-streamed on Facebook wherein he discussed with a number of unidentified individuals in a group chat the best ways to murder a person and which methods would be the most painful.  **See** Commonwealth's Exhibit No. 3; **see also** notes of testimony, 8/4/22, at 5-6, 10.  In said video, Appellant mused that there is a "certain someone" that he would love to see her throat slit.  Affidavit of Probable Cause, 5/11/22 at 1, ¶ 5.

The trial court found that Appellant violated the PFA by "indirectly, but pointedly threaten[ing victim] with unspeakable death and torture through social media."  Trial court opinion, 10/12/22 at 5.  In support of this conclusion, the trial court reasoned as follows:

> In all honesty, this is the worst video I have ever seen that talked about the best way to kill people.  And people that are sitting around in chatrooms talking about that are scary people.  So your friends are scary, if that's what you sit around and talk about. You're certainly not talking about puppy dogs and

cotton candy, you're talking about the best way to kill people. It goes on about, "Oh, a bullet to the head would be too easy 'cause there's no pain." There [are] other kinds of "Burning might not be too good, that might not be harsh enough. Paper cuts where you just sit there and cut the femoral artery and watch somebody bleed out, that would be a great way to do it." That's what this video said. It goes on and on and on about the best ways to kill people, eight minutes of it.

I don't get it, [Appellant]. You're a bright guy, you're not a dopey guy, you're a bright guy. And where we're going on this, let me put this on top of it all: You put that out there, anybody can watch it, can get that back to [victim] and tell her about it and show her the video. And now we have the video and that's an indirect threat. If I ever heard an indirect threat, that's an indirect threat.

When you put things out there on social media, it's an indirect threat to people, even though you might not hear it. It is, it's common sense. And there's no way -- anybody who watches this thing would be scared to death of you, would be scared to death of you. We watched it before, maybe not everybody in here saw it, but you got a drift of what I was just saying. Eight minutes on the best way to kill people. And he has an outstanding PFA and puts that on social media, of course somebody is going to run to his ex who has a PFA and tell her that, it's going to scare the heck out of her, which it would me. Scares the heck out of me just sitting here talking to you about it.

Notes of testimony, 8/4/22 at 15-17.

The record further reflects that Appellant contacted the victim via text message two days after the video was live-streamed – which in and of itself is a violation of the PFA order – and accused her of sending the video to his

employer and getting him fired. Notes of testimony, 6/8/22 at 7-9; ***see also*** Commonwealth's Exhibit No. 2.

Additionally, the trial court heard testimony from the victim, who indicated that she was sent the video by one of her acquaintances in an online domestic violence survivors' group, ***see*** notes of testimony, 6/8/22 at 12, and that Appellant's actions placed her in fear.

> Q. Was there anything in the video that was disturbing to you?
>
> A. The whole thing.
>
> . . . .
>
> Q. And how did seeing the message and getting this message by text message make you feel with regard –
>
> . . . .
>
> A. It made me extremely anxious. I felt like, at that point, he was going to have nothing to lose and he was going to be really mad and could come after me.

***Id.*** at 6, 9.

Based on all of the foregoing, we discern no error on the part of the trial court in finding that the Commonwealth presented sufficient evidence to support Appellant's conviction for indirect criminal contempt. Appellant's claim to the contrary must fail.

Appellant next argues that the trial court abused its discretion in admitting the aforementioned eight-minute video into evidence, because this

video was not "authenticated [or] verified" and was only a portion of a larger, 40-minute conversation. Appellant's brief at 10-12. We disagree.

"[T]he admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Fransen*, 42 A.3d 1100, 1106 (Pa.Super. 2012) (citation omitted), *appeal denied*, 76 A.3d 538 (Pa. 2013).

> The threshold inquiry with admission of evidence is whether the evidence is relevant. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. In addition, evidence is only admissible where the probative value of the evidence outweighs its prejudicial impact.

*Commonwealth v. Antidormi*, 84 A.3d 736, 750 (Pa.Super. 2014) (citations and internal quotation marks omitted), *appeal denied*, 95 A.3d 275 (Pa. 2014); *see also* Pa.R.E. 401(a), (b).

Instantly, the trial court found that there was no evidence at the hearings that the 8-minute video segment introduced by the Commonwealth was out of context. Trial court opinion, 10/12/22 at 3, n.1. The record further reflects that Appellant failed to present any evidence challenging its authenticity or asserting that the remaining portion of the video was somehow exculpatory. On the contrary, Appellant acknowledged that it he was the one speaking on the video in question. Notes of testimony, 8/4/22 at 5-6. The trial court, as factfinder, was in the best position to evaluate the relevancy of

the 8-minute video segment and determine its admissibility.  Accordingly, we discern no error on the part of the trial court in admitting said portion of the video into evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/30/2023