J-S21035-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MIGUEL ESPADA | : | |
| | : | |
| Appellant | : | No. 93 MDA 2022 |

Appeal from the Judgment of Sentence Entered December 9, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0000489-2021

BEFORE: DUBOW, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED JULY 06, 2022**

Miguel Espada (Espada) appeals from the December 9, 2021 judgment

of sentence[1] imposed by the Court of Common Pleas of Berks County (trial

court) following his convictions for possession with intent to deliver a

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Espada was sentenced immediately following his jury trial on December 6, 2021. On December 9, 2021, the trial court entered an amended judgment of sentence that included additional language regarding reentry supervision pursuant to 61 Pa.C.S. § 6137.2. The amended order appears to be erroneously dated as December 1, 2021. Espada's notice of appeal purports to be from the December 6, 2021 sentence and the later order denying his post-sentence motion. In cases where the trial court amends the judgment of sentence during the period it maintains jurisdiction pursuant to 42 Pa.C.S. § 5505, the direct appeal lies from the amended judgment of sentence as made final by the denial of post-sentence motions. *See Commonwealth v. Garzone*, 993 A.2d 1245, 1254 & n.6 (Pa. Super. 2010); *see also Commonwealth v. Shamberger*, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*). We have corrected the caption accordingly.

controlled substance (PWID), three counts of possession of a controlled substance, possession of drug paraphernalia and public drunkenness.[2] Espada's counsel has filed a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009), and a petition for leave to withdraw. We grant the petition and affirm.

## I.

We glean the following facts from the certified record. On January 29, 2021, officers on patrol in Reading approached a group of three men on the street and observed that one was smoking synthetic marijuana. Espada was standing several feet away, bent over at the waist and leaning against a wall. He appeared to be under the influence of synthetic marijuana. They detained him and learned that there was an outstanding warrant for his arrest.

While searching him incident to arrest, officers recovered three baggies of synthetic marijuana, three bundles of heroin and $163 in single dollar bills from his pockets. Espada was wearing a fanny pack under his winter coat that contained a cell phone, 90 yellow glassine bags of heroin, 50 blue glassine bags of heroin, two baggies of packaged heroin and a baggie of pop-top containers of cocaine. In total, they recovered 250 glassine bags of heroin and 44 containers of cocaine. They additionally recovered two hypodermic needles and a metal cap used to prepare heroin for injection.

---

[2] 35 P.S. §§ 780-113(a)(30), (16), (32); 18 Pa.C.S. § 5505.

At trial, the Commonwealth called Detective Darren Smith (Detective Smith) as an expert in controlled substances, the drug culture in Reading and whether controlled substances are possessed for distribution or personal use. He opined that Espada possessed the synthetic marijuana for personal use and the other substances were for distribution. He explained that the containers of cocaine would typically sell for between $10 and $20, so Espada possessed approximately $440 worth of cocaine in the capsules. The same amount of cocaine could be purchased in bulk in Reading for $187 to $220.

Detective Smith testified that the 148 yellow bags contained a mixture of fentanyl and heroin and the 102 blue bags contained fentanyl, fluoride fentanyl and cocaine. He said that dealers would carry two types of bags to expand their customer base, while most users prefer one type of drug. Packaged individually, the yellow bags each contained three hundred tenths of a gram and could be sold for a total of $740 to $1,480. Detective Smith testified that in his experience, drugs users usually purchase between one and ten bags at a time or up to twenty bags as a heavy user. He said that buying in bulk, a user could purchase half a gram for $50 in Reading or one gram for $100. The blue bags also contained three hundred tenths of a gram and could be sold for $510 to $1,020. Detective Smith estimated that Espada had approximately $2,000 worth of narcotics at the time of his arrest. Buying in bulk, Espada could have purchased the same amount of drugs for $1,000.

Detective Smith testified that while Espada only had $163 in cash on his person, the fact that the cash was entirely in one-dollar bills held together with rubber bands also contributed to his conclusion that he was selling narcotics. He said that a street-level dealer selling stamp bags for between $5 and $10 would have a lot of small bills, while a heavy drug user is unlikely to have a significant amount of cash at any time. Fanny packs were also commonly used by drug dealers in Reading as they allowed them to keep their product secure while also having quick access for sales. Finally, he testified that even though Espada was likely a drug user, many users also sell drugs to support their own addictions. He said that an individual who only uses drugs would not likely have the volume and variety of narcotics found on Espada. He said that most users consumed between 10 and 20 bags within a day, and the heaviest user he had encountered in his career used 40 bags per day.

Espada testified that he was 56 years old and had been using drugs regularly since he was 21. He said that at the time of his arrest, he would consume five or six bags and three of the pop-top containers at a time and use the metal cap to mix the substances together. He would use that amount of narcotics five or six times per day. He said that he purchased the drugs on the day of his arrest and then smoked synthetic marijuana immediately before the officers arrived at the scene. He had arranged to purchase five bricks of heroin and two bundles of cocaine and paid his dealer $1,300. Espada testified that he would have consumed all of the drugs in approximately three days.

Espada said that he was not employed at the time of his arrest and that he had borrowed $1,500 from an acquaintance who worked as a drug counselor. The acquaintance knew Espada was a drug addict but Espada did not tell him he planned to use the money to buy drugs. He said that he was not able to spend that amount of money on drugs every day, but that when he did come into money, he would spend it on drugs. He estimated that he spent at least $2,000 per month on drugs. He said that he had $163 in one-dollar bills because he had exchanged $200 from the loan for singles and then purchased some other items. He purchased the drugs from a dealer he was familiar with rather than buying in bulk because he did not want to risk buying from someone he did not know.

A jury found Espada not guilty of PWID for the cocaine and guilty of all the remaining charges. For the count of PWID for which he was convicted, the jury found by special interrogatory that the bags contained heroin and fentanyl. Espada proceeded immediately to sentencing and the trial court sentenced him to five to ten years' incarceration for PWID, six to 12 months' concurrent incarceration for the counts of possession of cocaine and synthetic marijuana,[3] and one year of concurrent probation for the count of possession of drug paraphernalia. For the count of public drunkenness, the trial court imposed a $25 fine. Espada filed a timely post-sentence motion seeking a

_____

[3] The count of possession of heroin and fentanyl merged with PWID.

new trial based on the weight of the evidence to support his PWID conviction or, in the alternative, reconsideration of his sentence. The trial court denied the motion and Espada timely appealed. He and the trial court have complied with Pa. R.A.P. 1925.

## II.

"When presented with an *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw." *Commonwealth v. Martuscelli*, 54 A.3d 940, 947 (Pa. Super. 2013). Procedurally, counsel must: (1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) furnish a copy of the brief to the defendant; and (3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention. *See Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013). Substantial compliance with these requirements is sufficient to permit withdrawal. *Commonwealth v. Reid*, 117 A.3d 777, 781 (Pa. Super. 2015).

Counsel has substantially complied with these procedural mandates. Counsel's brief avers that he reviewed the entire record and concluded that the instant appeal is frivolous. He served a copy of the brief and petition to withdraw on Espada and filed a copy of the letter he sent to Espada in this

Court.[4] ***See Commonwealth v. Woods***, 939 A.2d 896, 900 (Pa. Super. 2007) (noting that counsel must attach to their withdrawal petition a copy of the letter sent to the client). The letter informed Espada that he has the right to hire private counsel or file a *pro se* brief. Espada has not filed a response or retained private counsel to represent him.

We now examine the substantive elements of the ***Anders*** brief. The brief accompanying the petition to withdraw must: (1) provide a summary of the procedural history and facts with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. ***See Santiago***, ***supra***, at 361. Counsel's ***Anders*** brief summarizes the factual and procedural history, identifies three potential issues, and outlines the legal and factual analysis that led counsel to conclude that any appeal would be frivolous. Because counsel has complied with the procedural and substantive requirements of ***Anders***, we now "make a full examination of the proceedings

_____

[4] Counsel initially did not attach his letter to Espada to his application to withdraw. In response to an order from this Court, Counsel averred that he had inadvertently failed to attach the letter to his application and had sent Espada a second copy of the letter, brief and application to withdraw. He attached a copy of the letter to his response and we conclude he has complied with the procedural mandate.

and make an independent judgment to decide whether the appeal is in fact wholly frivolous." ***Santiago***, ***supra***, at 355 n.5.

## A.

First, counsel addresses the sufficiency of the evidence to support Espada's conviction for PWID.[5]  At trial, Espada conceded that he had possessed the controlled substances but argued that they were for personal

_____

[5] Our standard of review is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.  Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Lopez***, 57 A.3d 74, 79 (Pa. Super. 2012) (citation omitted).

consumption and not for sale.[6] He testified that he had suffered from addiction for 35 years and would have consumed all of the narcotics found on his person in approximately three days. He points to the hypodermic needles and metal cap in his possession as further evidence that he merely possessed the drugs for personal use rather than for sale.

To obtain a conviction for PWID, the Commonwealth must prove beyond a reasonable doubt that the defendant manufactured, delivered or possessed with the intent to deliver a controlled substance when not registered or licensed to do so. 35 P.S. § 780-113(a)(30). Intent to distribute can be established through all factors surrounding the defendant's possession of the drugs, including

> the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and large sums of cash. Expert opinion testimony is also admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use. The expert testimony of a witness qualified in the field of drug distribution, coupled with the presence of drug paraphernalia, is sufficient to establish intent to deliver.

*Commonwealth v. Carpenter*, 955 A.2d 411, 414 (Pa. Super. 2008) (citations omitted). No single factor is dispositive, and even a relatively small amount of drugs or cash can support a conviction for PWID if the remaining

---

[6] Based on Espada's admissions at trial, any challenge to the sufficiency of the evidence to support his convictions for possession of a controlled substance, possession of drug paraphernalia and public drunkenness would be frivolous.

factors establish an intent to deliver. *Id.* at 415 (citing ***Commonwealth v. Clark***, 942 A.2d 895 (Pa. 2008); ***Commonwealth v. Keefer***, 487 A.2d 915 (Pa. Super. 1985)).

Viewing the evidence in the light most favorable to the Commonwealth, it established beyond a reasonable doubt that Espada possessed the bags with the intent to distribute them. Espada had 250 bags at the time of his arrest, with two separate combinations of controlled substances in color-coded packaging. Detective Smith testified that dealers tend to carry different types of narcotics while users tend to favor a single type. The bags were packaged for individual sale and a user could obtain the same amount of narcotics substantially cheaper by buying in bulk. Espada had $163 in one-dollar bills in his pocket, which Detective Smith testified was consistent with making smaller sales to individual users. Detective Smith had also observed an increase in drug dealers in Reading using fanny packs to conceal their product.

While Espada did candidly admit to his own drug use, his personal use of narcotics does not foreclose the likelihood that he intended to distribute at least some of the narcotics he possessed. Detective Smith testified that users will sometimes sell drugs to support their own addiction. In his experience, most drug users would consume between 10 and 20 bags of heroin per day, and the heaviest drug user he had encountered in his career used 40 bags per day. He said it was uncommon for a drug user to have larger sums of cash. Based on all these factors, he opined that Espada had possessed the bags with

intent to distribute them. Detective Smith's expert testimony, combined with the evidence that the narcotics were packaged for individual sale and that Espada had $163 in cash on his person, was sufficient to support the conviction for PWID. *See Carpenter*, *supra*. Accordingly, any challenge to the sufficiency of the evidence to support his conviction is frivolous.

## B.

Next, counsel assesses the weight of the evidence to support Espada's conviction for PWID.[7] "An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Sullivan*, 820 A.2d 795, 805-06 (Pa. Super. 2003) (citation omitted). "Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Commonwealth v.*

_____

[7] When evaluating a challenge to the weight of the evidence to support a conviction, this court does not reweigh the evidence presented at trial, but rather evaluates the trial court's denial of the motion for a new trial for an abuse of discretion. *Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013). An abuse of discretion occurs "where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." *Id.* (citation omitted). A trial court's determination that the verdict was not against the weight of the evidence is "[o]ne of the least assailable reasons for granting a new trial." *Id.* (citation omitted).

*Widmer*, 744 A.2d 745, 752 (Pa. 2000) (quotations omitted). A new trial is appropriate only when the verdict "is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Olsen*, 82 A.3d 1041, 1049 (Pa. Super. 2013) (citation omitted). "[T]he evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Akhmedov*, 216 A.3d 307, 326 (Pa. Super. 2019) (*en banc*) (citation omitted).

Espada's post-sentence motion challenged the weight of the evidence to support his PWID conviction because he testified that he would have consumed the drugs within three days and that he was an addict.[8] He further argued that no evidence was presented by the Commonwealth to refute the claim that he could use that amount of narcotics within that time period. However, the jury was entitled to consider Espada's testimony and the testimony of the Commonwealth's witnesses, particularly Detective Smith, and conclude that Espada had, in fact, intended to distribute the heroin and fentanyl.[9] After observing the testimony of all of the witnesses, the trial court

_____

[8] A challenge to the weight of the evidence must be preserved orally on the record or in writing prior to sentencing or in a post-sentence motion; otherwise, it is waived for our review. *See* Pa.R.Crim.P. 607(A), 720(B). Because Espada only challenged the weight of the evidence to support his conviction for PWID in the trial court, any weight claim related to his other convictions is wholly frivolous.

[9] Additionally, we note that Espada's testimony that he was a drug addict was not inconsistent with the intent to deliver the narcotics. Detective Smith
*(Footnote Continued Next Page)*

concluded that it was reasonable for the jury not to credit Espada's testimony. We may not reweigh this evidence on appeal to come to a contrary conclusion. *Clay*, *supra*. The trial court did not abuse its discretion in holding that the verdict of guilt was not so contrary to the evidence as to shock one's sense of justice. *Olsen*, *supra*. This claim is frivolous.

## C.

Finally, we consider whether the trial court abused its discretion in denying Espada's post-sentence motion for reconsideration of his sentence.[10] "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Conte*, 198 A.3d 1169, 1173 (Pa. Super. 2018) (citation omitted). An appellant must preserve his claims at the time of sentencing or in a post-sentence motion, file a timely notice of appeal, include a statement

_____

testified that in his experience, some lower-level street drug dealers were also drug users who sold narcotics to support their own habits.

[10] Our standard of review is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Wallace*, 244 A.3d 1261, 1278–79 (Pa. Super. 2021) (citation omitted).

of reasons for allowance of appeal pursuant to Pa. R.A.P. 2119(f) in his brief, and raise a substantial question for review. *Id.* Here, Espada filed a timely post-sentence motion and notice of appeal and counsel has included a statement pursuant to Pa. R.A.P. 2119(f) in his brief. Thus, we consider whether he has raised a substantial question.

"A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Clarke*, 70 A.3d 1281, 1286–87 (Pa. Super. 2013) (citation omitted). Espada contends that the trial court imposed a manifestly excessive sentence without considering mitigating factors, such as his 35-year drug addiction and need for treatment. This claim presents a substantial question for our review. *Commonwealth v. DiClaudio*, 210 A.3d 1070, 1075-76 (Pa. Super. 2019) (citations omitted); *see also* 42 Pa.C.S. § 9721(b). Accordingly, we proceed to the merits of his claim.

When reviewing the discretionary aspects of a sentence that falls within the sentencing guidelines, we must affirm unless the "application of the guidelines would be clearly unreasonable." 42 Pa.C.S. § 9781(c)(2). In assessing the reasonableness of a sentence, we consider

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

When imposing a sentence, a trial court must ensure that the sentence is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). "Where the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Commonwealth v. Hill*, 210 A.3d 1104, 1117 (Pa. Super. 2019) (internal quotations & citation omitted).

Here, the jury found Espada guilty of PWID for a mixture of heroin and fentanyl. Based on his Prior Record Score (PRS) of five, the standard range of the sentencing guidelines for PWID of heroin was a minimum of 24 to 30 months' incarceration. The standard range for PWID of fentanyl was a minimum of 60 to 72 months of incarceration. The Commonwealth recommended a sentence of four to eight years, acknowledging that Espada was a low-level dealer who struggled with addiction himself. Espada argued

- 15 -

for "the lowest possible sentence" that would allow him to participate in the state drug treatment program. N.T., 12/6/21, at 181. Counsel said that Espada had been sober since his arrest and was in need of further treatment. She stressed Espada's heavy drug use at the time of his arrest and contended that users may only engage in distribution to support their own addictions. In his allocution, Espada told the trial court, "I would like treatment, if that's what I need, it would probably help too. I would like to get help. I know I got a sickness, but I got—I would like to get help." *Id.* at 182.

The trial court then reviewed Espada's PSI and detailed his criminal history, which began in 1988. He had previously been convicted of PWID, theft, accidents involving death or injury, burglary, simple assault, terroristic threats and multiple counts of possession of a controlled substance. The trial court observed that since 1988, Espada had been on supervision with various probation departments for significant periods of time. He completed a drug and alcohol treatment program in 2007 but continued to use drugs thereafter. He had remained unemployed due to his addiction. Based on this history, the trial court concluded that Espada had a high risk of re-offending.

The trial court also considered the large quantity of drugs Espada had at the time of his arrest and the danger associated with mixing fentanyl with heroin and distributing it. It noted that Espada had asked for treatment "if that's what I need" in his allocution and concluded that he had prior opportunities to seek treatment, to no avail. *Id.* Accordingly, it imposed a

- 16 -

sentence of 5 to 10 years for PWID, which was at the bottom of the standard range for PWID of fentanyl, with concurrent sentences for the other offenses. Under these circumstances, we cannot conclude that the trial court failed to consider mitigating evidence and all required factors under the Sentencing Code when it imposed Espada's sentence. ***See Hill***, ***supra***. The sentence is not clearly unreasonable and any challenge to the trial court's exercise of discretion is frivolous.

Moreover, after independently reviewing the record, we conclude that there are no additional non-frivolous issues that may support the appeal. ***See Commonwealth v. Yorgey***, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*) (holding that the ***Anders*** procedure requires this Court to first review the issues raised by counsel and then review the entire record "to ascertain if on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated").

Petition to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/06/2022

- 17 -