# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CYTOTHERYX, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 2023-1142-VLM |
| CASTLE CREEK BIOSCIENCES, INC. | ) | |
| AND PARAGON BIOSCIENCES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Submitted:  July 16, 2024
Decided: October 16, 2024

*Upon Consideration of Defendants' Motion to Dismiss,*
**DENIED.**

Gary W. Lipkin, Esquire, and Michelle C. Streifthau-Livizos, Esquire, of SAUL EWING LLP, Wilmington, Delaware, Attorneys for Plaintiff.

Adam V. Orlacchio, Esquire, and James G. Gorman III, Esquire, of BLANK ROME LLP, Wilmington, Delaware, Attorneys for Defendants.

**Medinilla, J.[1]**

---

[1] Sitting as a Vice Chancellor of the Court of Chancery of the State of Delaware by designation of the Chief Justice of the Supreme Court of Delaware under Del. Const. art. IV, § 13(2), pursuant to In re Designation of Actions Filed Pursuant to 8 Del. C. § 111 (Del. Sept. 18, 2023) (ORDER).

# I. INTRODUCTION

Plaintiff Cytotheryx, Inc. ("Cytotheryx") initiated this action for fraud and promissory estoppel against Castle Creek Biosciences Inc. ("Castle Creek") for its failure to redeem stock. It later amended to add parent, Paragon Biosciences, LLC ("Paragon") (collectively, "Defendants") to its First Amended Complaint.[2] Cytotheryx alleges damages in the amount of $3.2 million as a result of Defendants' false misrepresentations,[3] and Cytotheryx's reliance on the promise that it would be entitled to exercise its right to redemption.[4] Defendants seek dismissal under Rule 12(b)(6).[5] For the reasons below, Defendants' Motion is **DENIED**.

## II. FACTUAL BACKGROUND[6]

Pursuant to a Merger Agreement dated October 28, 2021 ("Merger Agreement")[7] Cytotheryx sold to Castle Creek its majority interest in a biotech startup gene therapy company, novavita thera, Inc. (novavita).[8] Castle Creek acquired novavita when the Merger Agreement closed on November 19, 2021.[9] In

---

[2] Verified First Am. Compl. ¶ 4, D.I. 7 (hereafter "Compl.").

[3] Compl. ¶ 35.

[4] *Id.* ¶ 40.

[5] Opening Br. in Supp. of Defs. Castle Creek Biosciences, Inc. and Paragon Biosciences, LLC's Mot. to Dismiss Cytotheryx, Inc.'s Verified Am. Compl., D.I. 13 (hereafter "MTD").

[6] The background is drawn from the well-pleaded allegations in the First Amended Complaint and the documents incorporated by reference therein.

[7] Compl. ¶ 5.

[8] *Id.* ¶¶ 8-9; *see* MTD, Ex. A (hereafter "Merger Agreement").

[9] Compl. ¶ 9.

exchange, Cytotheryx received a combination of cash and preferred C-1 shares of Castle Creek (the "Castle Creek Shares");[10] an 80 percent share of a $2 million cash payment and $8 million in Castle Creek stock, structured in this manner, at Cytotheryx's request, to minimize its tax liability.[11] These Castle Creek Shares included a right of redemption for $3.2 million pursuant to Castle Creek's Fourth Amended and Restated Certificate of Incorporation (the "Charter").[12]

## A. Negotiations and Pre-Merger Representations

Cytotheryx alleges it had multiple offers available interested in the purchase of novavita but elected to sell to Castle Creek on the strength of Castle Creek's assurances that Castle Creek would either close an initial public offering, which would have triggered a conversion and liquidity, or that the stock would be redeemed.[13]

Serving as both Paragon's Executive Vice President and Castle Creek's Chief Operating Officer, Mr. Babar Ghais ("Ghais") negotiated the terms of the Merger Agreement.[14] In this dual capacity, he allegedly made material pre-merger

---

[10] *Id.* ¶ 10; Merger Agreement § 2.3.

[11] Compl. ¶¶ 11, 13, 18; Pl. Cytotheryx, Inc.'s Answering Br. in Opp'n to Mot. to Dismiss at 2-5, 19, D.I. 15 (hereafter "MTD Opp'n").

[12] Compl. ¶ 11.

[13] *Id.* ¶ 12.

[14] *Id.* ¶ 16.

3

representations[15] confirming that Defendants had removed any obstacles to obtaining lender approval for Cythotheryx to exercise its contractual redemption right.[16]

---

[15] *Id.* ¶ 18. Those pre-merger representations included:

- This structure guarantees $10M in cash . . . 3 main shareholders have invested over $200M . . . so capital has not been an issue;

\*\*\*

- [E]ach Stockholder will have the ability to redeem, on a pro rata basis, all or, at the election of such Stockholder, a portion of the Closing Stock Payment, based on the aggregate cash value of $8M;

\*\*\*

- [Y]ou . . . have a contractual put right that you can exercise to take $8M cash instead . . . each noteholder . . . shall be entitled to transfer its note or equity securities issued upon conversion of the note to CCB at a price equal to . . . the original issue price of such securities;

\*\*\*

- The $8M convertible note . . . will basically be viewed as cash and not equity for the purposes of tax analysis given the certainty that it could be cash;

\*\*\*

- [W]e will need to get consent from additional shareholders that we have . . . in fact the reason there is a put right that enables you to get $8M in cash;

\*\*\*

- The fact that you have this 'put right' on the $8 million does not pose the same issues as being viewed as real cash for your analysis. In which case, why don't we just give you $2M in closing cash and $8 million milestone in cash in 2022?;

\*\*\*

- I have to believe that even if we take the PV of future milestones the $10 million (in cash or cashlike) is greater than 60%."

[16] *Id.* ¶ 19.

## B. The Merger and the Redemption Demand

Relying on Defendants' representations, Cytotheryx sold to Castle Creek its majority interest of novavita, executed the Merger Agreement, and accepted the Castle Creek Shares as payment for the assignment of Cytotheryx's shares of novavita,[17] including its redemption right. The Merger Agreement was signed on October 28, 2021.[18] The merger closed on November 19, 2021.[19] Over one year after closing on the merger at a February 2023 meeting, Castle Creek's CEO further represented to Cythotheryx's CEO that Castle Creek would honor its obligation to redeem the shares.[20]

Two months later, on April 1, 2023, Cytotheryx submitted a redemption request to Castle Creek pursuant to the Charter.[21] Section 6.1.1 of the Charter provides in relevant part that:

> [Castle Creek] shall redeem [a portion of the Castle Creek Shares] . . .
> provided that such redemption *does not then violate this Certificate of Incorporation or [Castle Creek]'s other then* existing governance
> documents or debt financing documents.[22]

---

[17] Compl. ¶ 20.

[18] *Id.* ¶ 5.

[19] *Id.* ¶ 9.

[20] *Id.* ¶ 24.

[21] *Id.* ¶ 25.

[22] MTD, Ex. B (hereafter "Charter") § 6.1.1.

5

Castle Creek pointed to one such debt document.[23] Under Section 7.5 of Castle Creek's Venture Loan and Security Agreement (the "Loan Agreement"), Castle Creek had agreed *not* to:

> (b) purchase, redeem, retire, defease or otherwise acquire, or permit any Subsidiary to purchase, redeem, retire, defease or otherwise acquire, for value any of their respective Equity Securities . . .; (c) return, or permit any Subsidiary to return, any capital to any holder of its Equity Securities as such.[24]

In September 2023, Castle Creek advised that its lender refused to permit the redemption and Castle Creek would not be able to redeem the shares.[25]

## C. The Integration Clause and Reservation of Rights

The terms of the Merger Agreement include an integration clause. It provides, in pertinent part:

> This Agreement, together with the Exhibits and Annexes hereto, and the Disclosure Letters and the other Transaction Documents, contains the entire understanding of the parties hereto with respect to the subject matter contained herein and supersedes all prior agreements and understandings, oral and written, with respect hereto. [26]

The Merger Agreement also contains a provision specifically preserving the parties' right to assert fraud claims. Section 11.5(a) of the Agreement states:

---

[23] Motion, Ex. C (hereafter "Loan Agreement") § 7.5.

[24] *Id.*

[25] Compl. ¶ 29.

[26] MTD at 3 (quoting Merger Agreement § 11.4).

Notwithstanding anything in this Agreement to the contrary, no Party shall be prevented from bringing claims for Fraud based upon, arising out of or relating to the representations, warranties, and covenants contained in this Agreement, any other certificate, instrument or document delivered in connection herewith.[27]

## III. PROCEDURAL HISTORY

Cytotheryx initiated this action for common law fraud and promissory estoppel against Castle Creek.[28] It amended to add parent Paragon.[29] Cytotheryx alleges damages in the amount of $3.2 million as a result of Defendants' false misrepresentations,[30] and Cytotheryx's reliance on the promise that it would be entitled to exercise its right to redemption.[31]

Defendants filed their Motion to Dismiss.[32] They assert both the fraud and promissory estoppel are barred as a matter of law because 1) the claims are directly belied by the integrated contract and fail to state a claim; 2) the integration clause bars claims based on alleged contradictory statements and future promises; 3) there has been no allegation of an actionable misrepresentation or promise; and 4) there is

---

[27] MTD Opp'n at 12 (quoting Merger Agreement § 11.5(a)).

[28] Verified Compl., D.I. 1.

[29] Compl. ¶¶ 30-40.

[30] *Id.* ¶ 35.

[31] *Id.* ¶ 40.

[32] MTD.

7

no viable claim against Paragon.[33]  After full briefing, the Court heard oral arguments on July 16, 2024.[34]  The matter is ripe for decision.

## IV.  STANDARD OF REVIEW

Upon a motion to dismiss under Rule 12(b)(6), the Court (i) accepts all well-pled factual allegations as true, (ii) accepts even vague allegations as well-pled if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[35]  The Court does not, however, accept "conclusory allegations that lack specific supporting factual allegations."[36]  But "it is appropriate. . .to give the pleader the benefit of all reasonable inferences that can be drawn from its pleading."[37]

---

[33] *See id.*

[34] Judicial Action Form for July 16, 2024, D.I. 23.

[35] *See ET Aggregator, LLC v. PFJE AssetCo Hldgs. LLC*, 2023 WL 8535181, at *6 (Del. Super. Dec. 8, 2023).

[36] *Id.* (quoting *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998)).

[37] *TrueBlue, Inc. v. Leeds Equity Partners IV, LP*, 2015 WL 5968726, at *2 (Del. Super. Sept. 25, 2015) (quotation omitted).

8

## V. DISCUSSION

Defendants ask this Court to accept their contract interpretation to bar all claims. This necessarily requires the Court to "effectuate the parties' intent based on the parties' words and the plain meaning of those words."[38] Contract interpretation is driven by the "assumption that the parties never include superfluous verbiage in their agreement."[39] The Court must give each word its plain "meaning and effect."[40] Additionally, to uphold "the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein."[41]

### A. The Fraud Claim is Reasonably Conceivable

The elements of common-law fraud are:[42]

> (1) a false representation made by the defendant; (2) the defendant knew or believed the representation was false or was recklessly indifferent to its truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted or refrained from acting in justifiable reliance on the representation; and (5) damage resulted from such reliance.[43]

---

[38] *Zimmerman v. Crothall,* 62 A.3d 676, 690 (Del. Ch. 2013) (citation omitted).

[39] *NAMA Hldgs., LLC v. World Mkt. Ctr. Venture, LLC*, 948 A.2d 411, 419 (Del. Ch. 2007), *aff'd.*, 945 A.2d 594 (Del. 2008).

[40] *Id*.

[41] *GMG Capital Invs., LLC v. Athenian Venture P'rs. I, L.P.*, 36 A.3d 776, 779 (Del. 2012) (quotation omitted).

[42] *Maverick Therapeutics, Inc. v. Harpoon Therapeutics, Inc.*, 2020 WL 1655948, at *26 (Del. Ch. Apr. 3, 2020).

[43] *Valley Joist BD Hldgs., LLC v. EBSCO Indus., Inc.*, 269 A.3d 984, 988 (Del. 2021) (citing *Prairie Cap. III, L.P. v. Double E Hldg. Corp.*, 132 A.3d 35, 49 (Del. Ch. 2015)).

## 1. The Integration Clause Does Not Bar Plaintiff's Fraud Claim.

Defendants first contend Cytotheryx is barred as a matter of law from relying on representations that are "expressly contradicted by the parties' written agreement."[44] Specifically, that the integration clause prohibits any reliance on extra-contractual statements.[45] In support, Defendants rely primarily on *Black Horse*,[46] *Flores*,[47] and *Ogus,*[48] in conjunction with the integration clause in support of dismissal.[49] Their refrain contends "[t]he *Black Horse* holding rings true here. Cytotheryx cannot shirk the deal it signed and tout redemption rights that are wholly devoid of basis in the Charter."[50]

As the Court of Chancery has held, "[i]t is unreasonable to rely on *oral* representations when they are expressly contradicted by the parties' written agreement" (emphasis added).[51] And it is correct that the *Black Horse* Court strictly

---

[44] MTD Opp'n at 12; Defs. Castle Creek Biosciences, Inc. and Paragon Biosciences, LLC's Reply Br. in Further Supp. of Their Mot. to Dismiss the Verified Am. Compl. at 4, D.I. 19 (hereafter "MTD Reply").

[45] *Id.*

[46] *Black Horse Cap., LP v. Xstelos Holdings, Inc.*, 2014 WL 5025926 (Del. Ch. Sept. 30, 2014).

[47] *Chapter 7 Tr. Constantino Flores v. Strauss Water Ltd.*, 2016 WL 5243950 (Del. Ch. Sept. 22, 2016).

[48] *Ogus v. SportTechie, Inc.*, 2020 WL 502996 (Del. Ch. Jan. 31, 2020).

[49] The analysis of Defendants' arguments focuses on *Black Horse* because the Defendants (to use Defendants' phrase,) "spills much ink discussing" it. MTD at 10.

[50] *See* MTD at 20.

[51] *Flores*, 2016 WL 5243950, at *7 (quoting *Carrow v. Arnold*, 2006 WL 3289582, at *11 (Del. Ch. Oct. 31, 2006), aff'd, 993 A.2d 1249 (Del. 2007)); *see also MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, at *14 (Del. Ch. Dec. 30, 2010) (granting motion to

enforced the integration clauses to bar reliance on extra-contractual representations.[52]  But this case is distinguishable.

*Black Horse* focused on the enforceability of an allege oral promise that never translated into a written agreement despite evidence that the parties executed six negotiated written agreements after that merger agreement.[53]  That Court determined no reasonable conceivability finding could be made under those circumstances, especially where the purported misrepresentations from that alleged oral agreement contradicted the terms of all other written agreements.[54]  As such,

> "[t]he facts as alleged [did] not support a reasonable inference of an objective manifestation of the parties' shared intent to be bound by the [that alleged oral] [a]greement at the time of its alleged formation. Indeed, the behavior of the parties in the days and weeks surrounding the alleged…[a]greement undermines the possibility that the Court could find it reasonably conceivable that they had a shared intent. Further the Complaint's non-conclusory factual allegations concerning the parties' actions after the time of the [alleged oral agreement] do not support a reasonable inference that the parties intended to be bound, either.[55]

---

dismiss fraud claim based on three oral statements that were expressly contradicted by a later contract).

[52] *See Black Horse Capital, LP*, 2014 WL 5025926, at *15-17, *22-24.

[53] The alleged oral promises were made before executing multiple detailed written agreements that did not reflect those promises. *See id.* at *13-14.

[54] *See id.* at *16.

[55] *Id.* at *17.

Delaware adheres to the objective theory of contract law.[56] So, "[t]he relevant inquiry, therefore, is not what the parties' subjective intent was then or is currently. This Court, and all Delaware courts, look to the parties' outward manifestations of intent and construe them according to the meaning they would have in the eyes of a reasonable person in like circumstances—*i.e.,* their objective meaning."[57]

Unlike *Black Horse,* where the alleged misrepresentations directly contradicted the terms of the agreement,[58] here, the alleged misrepresentations about lender approval for redemption are not expressly contradicted by the Agreement. The Charter's provision on which Defendants rely does not necessarily contradict representations that lender approval had been obtained or would not be an issue. Further distinguishing *Black Horse,*[59] the alleged misrepresentations here occurred before *and after* closing of the Merger Agreement to include statements made by Castle Creek's CEO over a year after closing that Castle Creek would honor its obligation to redeem the shares.

---

[56] *See Osborn ex rel. Osborn v. Kemp,* 991 A.2d 1153, 1159 ("Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party.").

[57] *Black Horse Cap., LP*, 2014 WL 5025926, at *16.

[58] *See id.* Similarly, Defendants' reliance on *Flores* and *Ogus* is unconvincing. Both involved alleged oral promises that directly contradicted clear written terms in the contracts. *See Flores*, 2016 WL 5243950, at *8-9*; Ogus*, 2020 WL 502996, at *7.

[59] The alleged oral agreement sought to be enforced involved a promise made only prior to the execution of six post-merger written agreements. *See Black Horse Capital, LP*, 2014 WL 5025926, at *13-14.

Moreover, the Merger Agreement preserves Cytotheryx's right to bring an action for fraud, "relating to the representations, warranties, and covenants contained in this Agreement."[60] Defendants do not dispute this. The fraud reservation is "explicit and unambiguous."[61] Delaware law does "not protect a defendant from liability for a plaintiff's reliance on fraudulent statements made outside of an agreement *absent a clear statement by that counterparty*—that is, *the one who is seeking to rely on extra-contractual statements*—disclaiming such reliance."[62]

Not only does Cytotheryx not give a clear statement of non-reliance, the parties—by agreement—clearly and explicitly reserve to Cytotheryx that right to bring fraud actions arising from the Merger Agreement and related documents.[63] Notably, Defendants accuse Cytotheryx of "pick[ing] and choos[ing] what contractual provisions should apply, and which do not."[64] Yet, Defendants emphasize the criticality of the integration clause in its Opening Brief, affording very

---

[60] MTD Opp'n at 12 (quoting Merger Agreement § 11.5(a)).

[61] *TrueBlue, Inc.*, 2015 WL 5968726, at *8 (holding a contractual anti-reliance clause only precludes a fraud claim based on extra-contractual representations if it is explicit and unambiguous); *see also Adviser Invs., LLC v. Powell*, 2023 WL 6383242, at *5 (Del. Ch. Sept. 29, 2023) (applying the *TrueBlue* standard to a Chancery matter).

[62] *Adviser Invs.*, 2023 WL 6383242, at *5 (emphasis in original) (quoting *FdG Logistics LLC v. A&R Logistics Holdings, Inc.*, 131 A.3d 842, 859 (Del. Ch. 2016) (emphasis added), aff'd *sub nom*, 148 A.3d 1171 (Del. 2016)). *See* MTD Opp'n at 16 ("Absent such a provision, Cytotheryx never agreed that it would not rely on representations by [Castle] in connection with the Agreement.")

[63] Merger Agreement § 11.5(a)

[64] MTD at 20.

13

little (if any) attention to the fraud reservation.  Only in their Reply do they address *and downplay* its significance.[65] And now ask this Court to find that the reservation only applies to intentional fraud.[66] This the Court cannot do.

First, they assert that a "false representation" made "without knowledge" does not constitute "an intent to defraud,"[67] and that the carefully selected phrase used by Cytotheryx in opposition to dismissal that "Castle Creek had its lender's approval,"[68] "obvious[ly]" refers to approval of the Merger Agreement.[69] This *ipse dixit* argument is unavailing.  There is nothing "obvious" about the intended scope of the phrase on which Defendants rely.  Indeed, a fair inference can be drawn, and should be at this stage, that "approval" includes the redemption.[70] Any meaning to that phrase is for the factfinder.  Defendants' insistence that "[o]ne *must assume* that [ ]

---

[65] *Pellaton v. Bank of New York*, 592 A.2d 473, 477 (Del. 1991) (a "party to a contract cannot silently accept its benefits, and then object to its perceived disadvantages).

[66] MTD Reply, at 8-9, (emphasizing that the Merger Agreement "excludes any claim based on negligent misrepresentation, equitable fraud or any other fraud…that requires something less than actual knowledge.").

[67] MTD at 8.

[68] *Id*. at 7 (emphasis in original).

[69] *Id.* That the parties "carefully and extensively" negotiated the Merger Agreement to include a specific definition of "Fraud" supports their intention to preserve claims for fraud outside the Integration Clause.  *See* MTD at 6; MTD Reply at 8-9, and discussion of *Express Scripts, Inc. v. Bracket Holdings Corp.*, 248 A.3d 824 (Del. 2021) (holding that parties to a contract could limit fraud claims to 'deliberate acts' constituting an intentional state of mind).

[70] *See* MTD Opp'n at 6-7, 12-13; Comp. ¶ 22; *See TrueBlue, Inc.*, 2015 WL 5968726, at *2 ("it is appropriate…to give the pleader the benefit of all reasonable inferences that can be drawn from its pleading") (quotation omitted).

any alleged reference to lender approval would be to [ ] the Merger Agreement . . , *not* the future redemption of shares" (emphasis added), fails for the same reasons.[71]

At this stage, one can reasonably infer that defendants' various representations regarding approval of the redemption were false. Cytotheryx's statement derives from the general proposition that Defendants knowingly made representations for a discrete purpose at a strategic point in time, in disregard of its truth or falsity, which "constitutes a false representation when made."[72] Any determination of whether that alleged conduct constitutes "actual and intentional fraud" involves factual issues that cannot be resolved now,[73] especially where intent, a critical factual component, remains at issue.[74]

### 2. Cytotheryx Sufficiently Pleads Fraud.

Defendants argue that even if the Merger Agreement does not preclude Cytotheryx's fraud claim, it is insufficiently pleaded.[75] While Delaware generally permits "notice" pleading,[76] Court of Chancery Rule 9(b) heightens the requirement

---

[71] MTD Reply at 3.

[72] *See* MTD Opp'n at 7.

[73] *See Eurofins Panlabs, Inc. v. Ricerca Biosciences, LLC*, 2014 WL 2457515, at *7 (Del. Ch. May 30, 2014).

[74] *Pellaton*, 592 A.2d, at 478; *See In re Wayportm Inc. Litig.*, 76 A.3d 296, 315 (Del. Ch. 2013) (holding the question of a defendant's state of mind is generally inappropriate for resolution on a motion to dismiss).

[75] MTD at 21-24.

[76] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 536 (Del. 2011).

that fraud be pleaded with particularity.[77] Specifically, the rule requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[78] However, "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally."[79]

In *Pearce v. NeueHealth, Inc.*,[80] after pleading a fraud claim largely based upon seemingly inactionable "imprecise statements and predictions[,]"[81] that Court explained that "[it] is not tasked with tailoring Plaintiffs' pleading to include only actionable statements."[82] Instead, "[its] role at the pleading stage is only to determine whether the plaintiff has brought a reasonably conceivable claim of fraud."[83] It has. Cytotheryx has provided details about the alleged misrepresentations, including dates, content, and the person making them (*i.e.,* Ghias).[84] Defendants concede as much that the "alleged, pre-closing representations . . . identify the speaker, time, place, and contents, as required by Rule 9(b)."[85]

---

[77] Del. Ch. Ct. R. 9.

[78] *Id.*

[79] *Id.*

[80] 2024 WL 3421900 (Del. Super. July 15, 2024).

[81] *Id.* at *7.

[82] *Id.* at *6 (collecting authority).

[83] *Id.*

[84] Compl. ¶ 18.

[85] MTD Opp'n at 21-22.

Moreover, "less particularity is required when the facts lie more in the knowledge of the opposing party than of the pleading party."[86] The details regarding lender approval would naturally be in Defendants' possession, not Cytotheryx's. Contrasted to *Black Horse,* where that Court found the alleged oral agreement terms to be vague and indefinite,[87] here the alleged written misrepresentations are presented with sufficient details, meeting the particularity requirements of Rule 9(b).[88] Even if it were determined that Section 11.5(a) applied only to intentional fraud, Cytotheryx has also sufficiently so pleaded.[89]

---

[86] *Kahn Bros. & Co. Profit Sharing Plan & Tr. v. Fischbach Corp.*, 1989 WL 109406, at *4 (Del. Ch. Sept. 19, 1989).

[87] *Id.* at *20.

[88] "[W]here pleading a claim of fraud has at its core the charge that the defendant knew something, there must, at least, be sufficient well-pled facts from which it can reasonably be inferred that this 'something' was knowable and that the defendant was in a position to know it." *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 208 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007).

[89] Compl. ¶¶ 4, 17-20, 23-24, 26, 32-33. Specifically, that (1) Defendants falsely represented that they were unaware of any obstacles by Castle Creek's lender to Cytotheryx's redemption of the Castle Creek Shares, and that Castle Creek would not have an issue obtaining lender's approval, if needed. *Id.* ¶ 31. (2) Defendants knew the representations were false at the time made, or they falsely represented that Castle Creek would not have issues obtaining the approval without knowing whether the lender had, in fact, approved. *Id.* ¶ 32. (3) the representations were made with intent to induce Cytotheryx to enter into the Merger Agreement and accept the Castle Creek Shares as payment in exchange for the sale of the novavita shares. *Id.* ¶ 33. (4) Cytotheryx reasonably relied on the representations that there was no objection to redemption of the shares by the lender nor that Castle Creek would encounter issues obtaining lender approval. *Id.* ¶ 34. and (5) it suffered damages in the amount of $3.2 million as a result of such reliance. *Id.* ¶ 39.

Accepting the allegations as true at this juncture, the integration clause does not unambiguously preclude reliance on extra-contractual representations.[90] Cytotheryx sufficiently pleads intentional fraud.[91] As to Count I (fraud,) the integration clause does not bar plaintiffs claim as a matter of law. The claim is further sufficiently plead under Rule 9.

The same analysis applies to Paragon. Defendants maintain it merely provided management services to Castle Creek and does not own any interest in Castle Creek.[92] Defendants further "reserve the right to seek Rule 11 sanctions unless Cytotheryx can produce a basis for the claims of ownership."[93] This is unnecessary. Cytotheryx alleges it was actively involved in pre-merger negotiations with Ghias, who was acting in a dual capacity as an officer of Paragon as well as Castle Creek.[94] At this stage, these allegations regarding Ghias' role and Paragon's controlling interest support a reasonable conceivable claim for fraud.[95]

---

[90] "Where the contract is ambiguous, or where it merely recites that the parties meant to integrate all their prior dealings into its terms, that contract does not preclude a party's proof of extra-contractual fraud." *ChyronHego Corp. v. Wight*, 2018 WL 3642132, at *1 (Del. Ch. July 31, 2018).

[91] *See Abry Partners V, L.P. v. F & W Acquisition LLC,* 891 A.2d 1032, 1050-51 (Del. Ch. 2006).

[92] MTD Reply at 17.

[93] *Id.* n 5.

[94] Compl. ¶ 16.

[95] *See Prairie Cap. III, L.P. v. Double E Holding Corp*., 132 A.2d 36, 65 (Del. Ch. 2015).

**B.    The Promissory Estoppel Claim is Reasonably Conceivable**

With minimal argument, Defendants also ask the Court to dismiss Count II (promissory estoppel).[96] The argument for dismissal of this claim rises and falls with Cytotheryx's fraud claim as the two are based on the same alleged material misrepresentations. For completeness, the Court briefly addresses the argument. A claim for promissory estoppel requires by clear and convincing evidence that:

> (i) A promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise.[97]

Cytotheryx alleges Defendants made promises that they were "unaware of any obstacles by Castle Creek's lender to Cytotheryx's redemption," and that "Castle Creek would not have an issue obtaining its lender's approval to do so."[98] Cytotheryx further alleges it reasonably relied on these promises when it decided to enter into the Merger Agreement.[99] Specifically, that they relied on Castle Creek's assurance that the Castle Creek Shares would be redeemable, in deciding whether to accept a lump sum payment or a mixed compensation structure to avoid taxes.[100]

---

[96] MTD at 21.

[97] *SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 348 (Del. 2013).

[98] Compl. ¶ 37.

[99] *See id.* ¶ 20.

[100] *See id.* ¶¶ 11-13; 18; MTD Opp'n at 3-4, 19.

Whether reliance on the alleged promises was reasonable is a factual question that cannot be resolved on a motion to dismiss.[101] Similarly, whether enforcement of the promise is necessary to prevent injustice is a factual inquiry not suitable for resolution at this stage.[102] Cytotheryx has alleged sufficient facts to support a reasonably conceivable claim for promissory estoppel.

For the foregoing reasons, Defendants' Motion to Dismiss as to both Counts I (Fraud) and II (Promissory Estoppel) is **DENIED**.

/s/ Vivian L. Medinilla
Vivian L. Medinilla
Judge

---

[101] *See Grunstein v. Silva*, 2009 WL 4698541, at *10 (Del. Ch. Dec. 8, 2009).
[102] *Id.*