J-S32014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN LAURENCE SILVERMAN | : | |
| | : | |
| Appellant | : | No. 237 MDA 2025 |

Appeal from the Judgment of Sentence Entered November 6, 2024
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-CR-0000961-2023

BEFORE:   LAZARUS, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:                    **FILED: OCTOBER 7, 2025**

Steven Laurence Silverman appeals from the judgment of sentence, entered in the Court of Common Pleas of Adams County, after a jury convicted him of one count of robbery—threatening immediate serious bodily injury.[1] Counsel has filed a motion to withdraw and an accompanying **Anders**[2] brief. Upon careful review, we affirm and grant counsel's motion to withdraw.

The trial court set forth the facts of this matter as follows:

Testimony developed at the two-day jury trial held August 6, 2024 and August 7, 2024[,] revealed the following relevant events occurred.  [Silverman's fiancée,] Pamela Click[,] testified that she and [Silverman] drove a black Ford Mustang from their Maryland

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3701(a)(1)(ii).

[2] **Anders v. California**, 386 U.S. 738 (1967).  **See also Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

residence to the Gettysburg [Walmart] on the evening of July 25, 2023, after stopping at Sheetz in Thurmont, Maryland. Surveillance footage from both Sheetz and [Walmart, as well as] cell phone satellite triangulation evidence from expert witness testimony by Trooper Jeremy Holderbaum[,] verified [] Click's testimony.  Sheetz surveillance footage from July 25, 2023[,] showed a black Mustang with Maryland registration 7FTE8987 driven by [Silverman] enter [the] Sheetz parking lot at 4:22 p.m.[,] exit at 4:37 p.m., and travel north on Route 15.  At approximately 6:25 p.m., [Walmart] surveillance footage revealed a black Mustang enter [Walmart's] back parking lot, which is connected to the CVS pharmacy at 1310 York Road by Shealer Road in Straban Township, Adams County[.]  Walmart surveillance footage showed an individual exit the black Mustang and walk toward CVS.  [] Click testified that [Silverman] left her in the car for ten to twenty minutes before returning.  At 6:51 p.m., CVS surveillance footage showed the robbery suspect enter CVS, commit the robbery at 7:00 p.m.[,] and exit the CVS at 7:06 p.m.  Walmart surveillance footage shows the black Mustang leave the Walmart parking lot at 7:10 p.m.

On July 25, 2023[,] at approximately 7:00 p.m., CVS employee Rochelle Pristello [] testified, and CVS surveillance footage confirmed, that she was transferring money from the registers to a safe in the back office when a white male with long black hair, wearing a bucket hat, a hoodie with a front pocket[,] and a medical mask[,] pushed her into the office.  [] Pristello testified that the individual demanded money and brandished a firearm during this encounter.  [] Pristello testified that the gun looked real.  [] Pristello testified, and the CVS video corroborated, that the individual took approximately $3,000 in cash from the CVS office and a bottle of Pure Leaf tea [] from CVS.  [] Pristello testified that the robber left "white smudges" on an office chair and the store refrigerator "where he got the tea out." Pennsylvania State Police [("PSP")] attempted to lift fingerprints and swab for DNA on the smudges, but no interpretable results were obtained from these tests.

Surveillance footage from [Walmart] and testimony by Trooper Holderbaum confirmed that [Silverman's] cell phone and the black Mustang left the Walmart parking lot around 7:10 p.m.  [] Click and Trooper Holderbaum's testimony confirmed that the cell phone and the black Mustang traveled to a residence in Fairfield, Adams County, [] arriving at approximately 10:39 p.m.  Trooper Holderbaum testified that[,] at approximately 12:58 a.m.,

[Silverman's] cell phone was located in Emmitsburg, Maryland. Trooper Holderbaum reviewed surveillance footage from the Thurmont Sheetz that showed the black Mustang stopped there at 1:10 a.m., and two individuals, identified by Trooper Holderbaum as [Silverman] and [] Click, got out of the vehicle and enter[ed] the Thurmont Sheetz. Trooper Richard Kline [] testified that[,] after reviewing the surveillance footage from the Thurmont Sheetz from this time[,] it appeared [Silverman] was wearing some of the same clothes that the CVS robber was wearing from earlier that evening. [] Click's testimony verified that she and [Silverman] were in the same locations as [Silverman's] cell phone.

CVS store manager Melody Lowery [] testified that[,] on July 28, 2023, she discovered an unopened bottle of Pure Leaf tea on the sidewalk next to CVS's back door that contained conspicuous white smudges. Trooper Kline, who was assigned to investigate the robbery, testified that on the day of the robbery, he did not investigate the exterior of the building for evidence, nor did he instruct any other [t]roopers to do so. [] Lowery testified regarding the tea bottle that she "picked it up with a paper towel . . . then we called later that morning for one of the troopers to come pick it up."

[] Lowery also testified that the CVS surveillance camera covering the area of the back door where she found the tea bottle was not working at the time of the robbery. This door was not used except by CVS staff accepting deliveries.

Kelly Plumber, a forensics [t]rooper with the [PSP], testified that she was able to lift two viable fingerprints from the tea bottle and sent them to the [PSP] Laboratory for analysis. Trooper Jonathan Simmons [] of the [PSP] AFIS section, a latent fingerprint examiner, was qualified as an expert in the field of fingerprint analysis. Trooper Simmons testified that the two fingerprints lifted from the tea bottle matched [Silverman's] fingerprints.

Maryland State Trooper Henry Doll [] testified, and his body camera recording confirmed, that at 1:17 a.m. on August 1, 2023, Trooper Doll initiated a traffic stop on a black Mustang with Maryland registration 7FTE8987 at Exit 43C of Interstate 68 in Cumberland, Maryland[,] and identified [Silverman] as the driver and [] Click as the passenger. Trooper Holderbaum's analysis of [Silverman's] cell phone confirmed Trooper Doll's testimony.

On August 16, 2023, at approximately 6:00 p.m., Detective Jeff Johns [] of the Ocean City Police Department testified that he observed [Silverman] carrying luggage to a black Mustang, with Maryland registration 7FTE8987, in the parking lot of a motel in Ocean City, Maryland. [Silverman] was arrested, and [] Click was detained. Detective Johns obtained a search warrant for the Mustang and[,] during the search of the vehicle[,] found a cell phone, a Glock-style replica B.B. gun, a black wig, a black bucket hat, a green mask, a gray hoodie sweatshirt, black Nike sweatpants[,] and men's Nike sneakers[.] These items were all admitted into evidence by the Commonwealth at trial. Detective Johns further testified that he could not confirm the B.B. gun was fake until after a thorough inspection. [] Click confirmed that she and [Silverman] were staying at the motel at the time of the arrest.

A comparison of the clothing and items [] seized from [Silverman's] black Mustang illustrates these clothes were identical to what the robbery suspect was wearing on July 25, 2023.

At trial, the Commonwealth presented [as Exhibit 56] a picture of [Silverman's] naked torso and tattoos, where [he] appears to be wearing orange bottoms. Testimony from law enforcement audio/video technician Richard Roth indicated that the tattoos in the photograph [] of [Silverman's] left arm matched the tattoos in the still frames of the CVS surveillance video from July 25, 2023 of the robber's left arm. [] Roth presented a PowerPoint demonstration showing an overlap of the tattoo depicted in exhibit 56 with a still photograph taken from the CVS video of the robber. The tattoos shown are identical.

Trial Court Opinion, 3/25/25, at 1-6 (footnotes omitted).

On August 7, 2024, a jury convicted Silverman of robbery—threatening immediate serious bodily injury. The trial court deferred sentencing and ordered a pre-sentence investigation report. On October 15, 2024, the trial court sentenced Silverman to 10 to 20 years' incarceration. Silverman filed a post-sentence motion, in which he raised challenges to the admission of Commonwealth's Exhibit 56 and to the weight of the evidence. On January

28, 2025, the trial court denied Silverman's post-sentence motion and Silverman filed a timely notice of appeal.[3]  On March 10, 2025, counsel filed a Pa.R.A.P. 1925(c)(4) statement of intent to file an ***Anders*** brief.

Prior to addressing the claims raised by counsel in his ***Anders*** brief, we must determine whether counsel has complied with the dictates of ***Anders*** and its progeny in his request to withdraw from representation.  ***See Commonwealth v. Goodwin***, 928 A.2d 287, 290 (Pa. Super. 2007) (this Court may not review merits of underlying issues without first examining counsel's request to withdraw).  Court-appointed counsel seeking to withdraw from representation on the basis that the appeal is frivolous must:

> (1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has

---

[3] The trial court imposed its judgment of sentence on October 15, 2024, and Silverman filed a counseled post-sentence motion on October 23, 2024. Thereafter, on November 6, 2024, the trial court entered an "Amended Order of Court" amending Silverman's judgment of sentence to include restitution in the amount of $3,128.00 as a condition of sentence.  ***See*** Amended Order, 11/6/24.   On January 28, 2025, the trial court denied Appellant's post-sentence motion. On February 18, 2025, counsel filed a notice of appeal erroneously stating that, in addition to the judgment of sentence, the appeal was also from the jury verdict and the denial of Silverman's post-sentence motion.  ***See Commonwealth v. O'Neill***, 578 A.2d 1334, 1335 (Pa. Super. 1990) ("[I]n criminal cases[,] appeals lie from judgment of sentence rather than from the verdict of guilt").

Further, where, as here, the trial court amends the judgment of sentence during the period it maintains jurisdiction, the direct appeal lies from the amended judgment of sentence. ***See Commonwealth v. Garzone***, 993 A.2d 1245, 1254 n.6 (Pa. Super. 2010).  Accordingly, we have corrected the docket to reflect that the appeal lies from the November 6, 2024 amended sentencing order.

determined that the appeal would be frivolous; (2) file a brief referring to anything that arguably might support the appeal[;] and (3) furnish a copy of the brief to the defendant and advise the defendant of his [] right to retain new counsel or raise any additional points that he [] deems worthy of the court's attention.

***Id.***

Additionally, the Pennsylvania Supreme Court has explained that a proper ***Anders*** brief must:

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d 361. Finally, this Court must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." ***Commonwealth v. Flowers***, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Here, our review of counsel's ***Anders*** brief and application to withdraw reveals that counsel has complied with each of the technical requirements of ***Anders*** and ***Santiago***. Counsel states that he has made a conscientious examination of the record, determined that further pursuit of a direct appeal would be frivolous, and furnished a copy of the letter sent to Silverman advising him of his right to retain new counsel, proceed *pro se*, or raise issues in response to the brief.[4] ***See Goodwin***, ***supra***. Additionally, counsel's

---

[4] Silverman has not filed a response to counsel's ***Anders*** brief.

*Anders* brief complies with the requirements of *Santiago*. Accordingly, we conclude that counsel has substantially complied with the requirements for withdrawing from representation and proceed with an independent review of the merits. *See Flowers*, *supra*.

Counsel first raises Silverman's claim that the verdict was against the weight of the evidence. In particular, Silverman argues: (1) the Pure Leaf tea bottle was planted because it took three days to be discovered, was found in a place where the surveillance camera was not working, and it was "convenient" that Trooper Kline testified that he had not searched that area on the night of the incident, *Anders* Brief, at 15; (2) fingerprint expert Trooper Simmons only reviewed the first of 20 potential matches provided by the system after he entered Silverman's fingerprints and did not review any of the others, *see id.*; (3) Click's testimony was "guided" by the Commonwealth and should be given no weight, *see id.* at 16; (4) the matching clothing found in Silverman's car was both "generic" and belonged to someone else staying at the motel, *see id.*; and (5) Roth used Photoshop to achieve a match between the robber and Silverman. *See id.*

Our standard of review of the denial of a weight claim by a trial court is to examine "the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013), quoting *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000). In a post-sentence motion, a weight claim "is addressed to the discretion of the trial court." *Widmer*, 744 A.2d at

751-52. "In order for a defendant to prevail on a challenge to the weight of the evidence, 'the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the court.'" **Commonwealth v. Talbert**, 129 A.3d 536, 546 (Pa. Super. 2015), quoting **Commonwealth v. Sullivan**, 820 A.2d 795, 806 (Pa. Super. 2003). A trial court's denial of a motion "based on a weight of the evidence claim is the least assailable of its rulings." **Commonwealth v. Diggs**, 949 A.2d 873, 880 (Pa. 2008).

"An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court[.]" **Clay**, 64 A.3d at 1055. This Court must limit review to "whether the trial court abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will." **Id.** at 1056. "A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." **Commonwealth v. Charlton**, 902 A.2d 554, 561 (Pa. Super. 2006), quoting **Commonwealth v. Galindes**, 786 A.2d 1004, 1013 (Pa. Super. 2001).

Here, the Commonwealth's evidence included cell phone records, surveillance footage, and police body camera footage establishing Silverman's whereabouts and actions on the night of the incident. Silverman's fiancée testified that she was with him over the course of the entire night in question and that she waited for him in the Walmart parking lot, which was adjacent to the CVS, while he was gone for 10 to 20 minutes. Police found clothing in

Silverman's car identical to that worn by the robber and Silverman's tattoo matched that of the robber. A CVS employee testified that the robber took a bottle of Pure Leaf tea, and a Pure Leaf tea bottle with Silverman's fingerprints on it was found outside the back door of the CVS store. In sum, the evidence of Silverman's guilt was overwhelming and, as such, the trial court did not commit an abuse of discretion in denying his claim that the verdict was against the weight of the evidence. **Widmer**, **supra**.

In the second and final issue raised in counsel's **Anders** brief, Silverman claims that the trial court abused its discretion in admitting Commonwealth's Exhibit 56, the photograph of Silverman's torso showing his tattoos used by the Commonwealth to demonstrate that Silverman's tattoos matched those of the robber. Silverman's complaint is that the photograph shows him wearing orange bottoms, which "a reasonable person would believe [to be] prison[-]issued orange pants[.]" **Anders** Brief, at 18. Silverman asserts that "his case should be treated the same as [if] he had been brought into the courtroom in prison[-]issued clothing." **Id.** at 19, citing **Commonwealth v. Keeler**, 264 A.2d 407 (Pa. Super. 1970) (holding trial court abused discretion by requiring defendant appear in court wearing prison garb as it "prejudiced the jury against him and demeaned him before conviction"). Silverman argues that the Commonwealth "had other ways of attempting to prove [its] case without using that prejudicial photo." **Anders** Brief, at 20.

> The "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." **Commonwealth v. Tyson**,

119 A.3d 353, 357 (Pa. Super. 2015) (en banc) (internal citation and quotation marks omitted)[.] "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias[,] or ill-will, as shown by the evidence or the record, discretion is abused." *Commonwealth v. Walker*, [] 92 A.3d 766, 772-73 ([Pa.] 2014) (internal quotation marks and citations omitted).

*Commonwealth v. Schofield*, 312 A.3d 921, 925 (Pa. Super. 2024).

Relevance is the threshold for admissibility of evidence. *Commonwealth v. Cook*, 952 A.2d 594, 612 (Pa. 2008). Pennsylvania Rule of Evidence 401 provides as follows:

**Rule 401. Test for Relevant Evidence**

Evidence is relevant if:

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b) the fact is of consequence in determining the action.

Pa.R.E. 401. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable[,] or supports a reasonable inference or presumption regarding a material fact." *Commonwealth v. Drumheller*, 808 A.2d 893, 904 (Pa. 2002). "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "The court may exclude relevant evidence if its probative value is outweighed by a danger of . . . unfair prejudice[.]" Pa.R.E. 403. However,

[e]vidence will not be prohibited merely because it is harmful to the defendant. [Our Supreme] Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from

the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged.

**Commonwealth v. Dillon**, 925 A.2d 131, 141 (Pa. 2007) (citation and quotation marks omitted).

The trial court addressed this claim as follows:

Initially, the [c]ourt notes that there is nothing in Commonwealth [E]xhibit 56 which would lead the jury to believe that [Silverman] was wearing prison attire and[,] therefore[,] was incarcerated when the photograph was taken. The photograph depicts [Silverman] with his entire torso naked and illustrating numerous tattoos. The photograph shows several inches of [Silverman's] orange pants or shorts, but nothing indicating these orange pants or shorts were prison garb. [Silverman] is not in handcuffs and there is nothing in the photo to show [he] was incarcerated when the photo was taken. [Silverman's] argument has no merit[,] as there is nothing in [E]xhibit 56 which would illustrate [he] was incarcerated when the photo was taken. Therefore, [Silverman] was not prejudiced by the admission of the photograph.

Even if the jury believed Commonwealth [E]xhibit 56 was taken while [Silverman] was incarcerated, such a photograph would be admissible in accordance with [Pa.R.E.] 403. [Our Supreme Court's decision in] **Commonwealth v. Gallaway**, 283 A.3d 217 (Pa. 2022)[,] is controlling. In **Gallaway**, the [] Court ruled:

[I]n determining whether a jury should be permitted to view a videotape which shows a defendant in prison clothing, it is sufficient for a trial court to analyze the challenged evidence under Rule 403 of our Rules of Evidence, which requires a court to weigh the probative value of the evidence against the danger of unfair prejudice. However, in considering the danger of unfair prejudice resulting from the jury's observation of a videotape showing the defendant in prison clothing, the court should assess the degree to which the videotape will serve as a "constant reminder of the accused's condition" that may affect a juror's judgment, or whether it is likely to be a "continuing influence throughout the trial," creating a risk that the jury will consider impermissible factors in reaching its decision. **Estelle**[ **v.**

- 11 -

> *Williams*], 425 U.S. [501,] 504-05 [(1976)]. The greater impact of the evidence in this regard, relative to its probative value, the more likely its admission should be prohibited.
>
> *Id.* at 234-235.
>
> In *Gallaway*, the jury observed a videotape of a twenty-minute interview of defendant wearing prison clothing. [Our] Supreme Court [] concluded that the trial court did not abuse its discretion in admitting the videotape under Rule 403. As in *Gallaway*, the probative value of Commonwealth [E]xhibit 56[,] showing tattoos on [Silverman's] left arm which are identical to tattoos on the left arm of the CVS robber[,] clearly outweighs any prejudice [Silverman] suffered through admission of the photograph. In essence, this testimony acted as identification testimony showing [Silverman] committed the CVS robbery.
>
> Furthermore, the jury was aware [Silverman] was taken into custody on August 16, 2023[,] by Ocean City, Maryland[,] police. The jury only witnessed the photograph for several minutes during the testimony of Richard Roth, and his testimony primarily focused on [Silverman's] left arm tattoo, not on the orange material around [Silverman's] waist. Therefore, as set forth in *Gallaway*,
>
>> we find that the videotape was not the type of "constant reminder" of [defendant's] condition that would have the effect of d[ilut]ing the presumption of innocence under the principles of *Estelle*; it was not "a continuing influence throughout the trial" that created an unacceptable risk of ["]impermissible factors coming into play["] in the jury's judgment.
>
> *Id.* at 235. Clearly, the [c]ourt did not err in allowing the admission of Commonwealth [E]xhibit 56.

Trial Court Opinion, 3/25/25, at 12-13 (formatting altered).

We agree with the trial court. Exhibit 56 was highly probative, in that it identifies Silverman as the robber via his unique tattoos. Conversely, nothing in the photograph definitively demonstrates that Silverman was in custody when the image was taken. While it may be common knowledge that

- 12 -

prison-issued garb is often orange in color, the jury was aware that Silverman had—at least at some point—been in police custody, and the nature of the single, still image—the exact provenance of which was unknown to the jury— did not "create[] an unacceptable risk of 'impermissible factors coming into play' in the jury's judgment." *Gallaway*, 283 A.3d at 235. Accordingly, the trial court did not abuse its discretion in admitting Commonwealth's Exhibit 56.

Judgment of sentence affirmed. Motion to withdraw granted.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/07/2025